UNITED STATES DISTRICT COURT
MIDDLE DISTRICT
ORLANDO DIVISION

| | | |
|---|---|---|
| CHARLES HAROLD BEDGOOD, | ) | |
| JOEL WILSON BRANDON, HANNAH | ) | |
| LYN HEIL-BRANDON, EDDIE MATHEWS | ) | |
| JR., REENA T. SMITH, JUSTIN FLOYD | ) | |
| DIAZ, CANDICE CLARK, and | ) | |
| ROSLIND CHRISTINE HARPER, | ) | |
| | ) | |
| Plaintiffs, individually and on behalf of | ) | Case No.: |
| all other persons similarly situated, | ) | |
| | ) | JURY TRIAL DEMANDED |
| vs. | ) | |
| | ) | |
| WYNDHAM VACATION RESORTS, INC., | ) | |
| and WORLDMARK, THE CLUB, WYNDHAM | ) | |
| RESORT DEVELOPMENT CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Charles Harold Bedgood (Bedgood), Joel Wilson Brandon (Brandon), Hannah Heil-Brandon (Heil), Eddie Mathews Jr. (Mathews), Reena T. Smith (Smith), Justin Floyd Diaz (Diaz), Candice (Clark) and Rosalind Christine Harper (Harper), individually and on behalf of all other persons similarly situated, allege as follows for their Complaint against Defendants Wyndham Vacation Resorts, Inc., (Wyndham) Worldmark, The Club (Worldmark), and Wyndham Resort Development Corporation (WRDC).

## NATURE OF ACTION

1. This case is about one identical arbitration clause in Wyndham and WorldMark contracts, and a single, common fraudulent omission by Wyndham and WorldMark. It is the antithesis of the class actions with shotgun pleadings that have been previously filed against Wyndham in this District.

2.   The American Arbitration Association (AAA) refuses to administer arbitration claims against Wyndham because Wyndham fails:

> … to comply with the AAA's policies regarding consumer claims.  Accordingly, we must decline to administer this claim and any other claims between Wyndham Vacation Ownership and its consumers at this time.

> (See **Exhibit A**, AAA letter dated December 30, 2020 to Plaintiff Brandon, **Exhibit B**, AAA letter dated February 24, 2021 to Plaintiff Bedgood, and **Exhibit C**, AAA letter dated December 30, 2020 to Lawrence Sidney Connor, Esq.)

3.   Plaintiffs are informed and believe that one reason the AAA refuses to hear arbitration cases against Wyndham is that Wyndham's arbitration clause violates Principle 7 of the AAA Consumer Due Process protocol.  Principle 7 mandates that arbitrations must be conducted at locations reasonably convenient to both parties.  However, the Wyndham and WorldMark clause requires that any AAA arbitration proceed only in Orange County, Florida, even though Wyndham Owners live all over the country.

4.   The AAA has removed Wyndham and WorldMark from its Consumer Clause Registry. The AAA Registry lists companies for whom the AAA will administer consumer arbitrations. Wyndham and WorldMark are not on the list.

5.   In the last five years, the AAA has only closed seven cases against Wyndham.  This number is incredibly small since in any given year, thousands of Wyndham consumers seek to cancel their timeshare contracts.  Six of the seven AAA cases settled or were withdrawn. Plaintiffs are informed and believe that the reason so few cases go to arbitration is that Wyndham fails to comply with AAA Consumer Arbitration Rules.

6.   In the past, if Wyndham was sued by a consumer,  Wyndham moved to compel arbitration.  However, now if a consumer arbitration is filed, the arbitration cannot proceed because

of Wyndham's failure to comply with AAA Rules.  Wyndham can not demand arbitration one minute and fail to comply with AAA Rules the next minute.

7.  The single material omission on which this Complaint is based is that Wyndham and WorldMark fail to tell Plaintiffs and Class Members that they will be unable to use their timeshares to stay at their desired locations.  If Plaintiffs had been told this fact, they would have not purchased timeshares.  The omission is a fraudulent inducement to enter a contract and it renders the contract voidable and rescindable.

8.  Plaintiffs Bedgood, Brandon, Heil-Brandon, Mathews, Smith  and Harper signed contracts with Wyndham.  Diaz and Clark signed with Worldmark and WRDC.

9.  Plaintiffs seek a declaration that the arbitration clause in their contracts is not enforceable and that the contracts are voidable and rescindable.  Plaintiffs also seek a declaration that the Wyndham and WorldMark contracts are rescindable.  They were induced by a fraudulent omission.

10.  A Wyndham Owner who wants to stay at a Wyndham destination will typically find that when a room is not available through Club Wyndham, he or she can go on expedia.com and book the same resort at a  much cheaper price than through their timeshare.  There is no benefit to owning a Wyndham timeshare.  It is a liability, not an asset.  Since the Wyndham and WorldMark contracts are voidable, clauses within the contracts waiving class actions, jury trials, and punitive damages are not enforceable.

11.  Plaintiffs seek damages for a  F. R. Civ. Pro. 23(b)(3) class based on fraud. A parallel fraud claim was pled by the plaintiffs in *Buxton v. Wyndham Vacation Resorts, Inc*. ( No. 19-cv-1555-Orl-37DCI), *Campbell v. Wyndham Vacation Resorts, Inc.* (No. 19-cv-01556-Orl-37DCI),  *Blessing v. Wyndham Vacation Resorts, Inc.*, (No. 19-cv-1613-Orl-37DCI);

*Chandler v. Wyndham Vacation Resorts, Inc.*, (No. 19-cv-1647-Orl-37DCI), and *Mason v. Wyndham Vacation Resorts, Inc.*, (No. 19-cv-1613-Orl-37DCI).  On April 22, 2020, Judge Roy B. Dalton, Jr. issued an Order denying Wyndham's motion to dismiss the fraud claim. (**Exhibit D**.)

12.  Plaintiffs' contracts have the same arbitration clause.   It is paragraph number 34 in the Wyndham contracts and paragraph 29 in the WorldMark contract.   The same clause is used regardless of location of the timeshare sale.  It is the same for all Class Members.  It reads as follows:

### H. DISPUTE RESOLUTION/ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT CERTAIN DISPUTES <u>MUST BE RESOLVED</u> BY BINDING ARBITRATION. IN ARBITRATION YOU GIVE UP THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES, AND ARE SUBJECT TO VERY LIMITED REVIEW.**

**34. Dispute Resolution/Arbitration.** Any Disputes between the Parties **shall be resolved** as follows:

**(a)     Definition of Disputes.** The Parties agree that any dispute, claim, suit, demand or controversy arising out of or relating to this Agreement (any ***"Dispute') shall be determined*** exclusively and finally by individual arbitration, except as specified below. "Dispute" includes, without limitation, any claim regarding any breach, termination, enforcement, interpretation or validity of this Agreement, any claim arising out of or related to the marketing, purchase, and/or use of Owner's Ownership, Owner's use of Seller's properties, and/or Owners participation in any activities/events sponsored, organized, or made available by Seller or its affiliates.

**(b)     Neutral Arbitrator/No Jury.**  Any Dispute **will be submitted** to a neutral arbitrator, for a final and binding determination, known as an award. The arbitrator is an independent decision maker, appointed by the American Arbitration Association ***("AAA"),*** who reviews and weighs evidence provided by both Parties, and issues an award enforceable in court. Decisions by an arbitrator are subject to very limited review by a court. Except as expressly provided below in this Dispute Resolution/Arbitration clause, the Parties waive and relinquish any and all rights to have a court or a jury resolve any Dispute. **The Parties expressly waive any right to a jury trial.**

**(c)     Individual Basis/No Class Actions.** The Parties expressly intend that **any Disputes will be arbitrated** on an individual basis. There will be no right or authority for any Dispute to be arbitrated or litigated in any way on a class, mass, or other collective basis, and the Parties waive any right to bring or join any representative or other claim brought on behalf of the general public, other purchasers, or other persons similarly situated.

**(d)     Certain Carve-Outs. [ NOT APPLICABLE HERE]** Despite this arbitration provision, the Parties reserve certain rights to proceed in court without waiving their right to arbitrate under this Dispute Resolution/Arbitration provision: (1) Seller reserves the right to seek emergency injunctive relief from a court to address any circumstances or behavior, by Owner or any person who obtained or is using Owner's rights and privileges, that Seller believes may present a risk or threat to the safety, security or reputation of any resort, guests, reservation system, data system, or other feature or location connected with Seller; (2) Owner reserves the right to file a Dispute in small claims court in Florida, as long as the matter remains in small claims court and proceeds only on an individual basis; and (3) No provision of this Dispute Resolution/Arbitration provision shall limit the right of any Party to seek and use any available remedies, judicial or otherwise, for the purpose of foreclosing upon, or accelerating any debt secured by any property that is involved in any Dispute or subject to any Note, Promissory Notes, Mortgage Deed or Mortgage (the ***"Loan Documents")*** executed by the Parties. Any such acceleration, or

foreclosure, process shall be governed by the terms of the Loan Documents and applicable foreclosure law and procedures may occur outside the arbitration process if either of the Parties so elects, and shall not be deemed a waiver of the right to arbitrate any other issue involved in a Dispute.

**(e)** **Applicable Rules/Location.** This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.). The arbitration shall be administered by the AAA under its **Consumer Arbitration Rules**, available online at www.adr.org or by calling the AAA at 1-800-778-7879 (the **"AAA Rules"), except that** the Parties expressly agree that the AAA Supplementary Class Rules shall not apply, given the express class waiver above, and further agree that Rules 14(a) and 53 of the Consumer Arbitration Rules **shall not** authorize any arbitrator or court to find that any class, mass, collective or representative claim may be arbitrated. **The arbitration shall be held in the County of Orange, State of Florida unless the Parties agree to another location in writing,** or **the arbitrator decides to hold a telephonic hearing to reach a decision based solely on the Parties' submission of documents, or to designate another location reasonably convenient for the Parties.** In the event of any conflict between the MA Rules and this Agreement, the provisions of this Agreement shall be controlling.

**(f)** **Stay of Proceedings.** In the event that a Dispute involves both issues that are subject to arbitration and issues that are not subject to arbitration, the Parties unequivocally agree that any legal proceeding regarding the issues not subject to arbitration shall be stayed pending resolution of the issues subject to arbitration, except for any proceedings described in Paragraph 34(d) above, which
actions shall proceed without a stay.

**(g)** **Final and Binding.** The arbitration award shall be final and binding on the Parties. Judgment on the arbitrator's award may be entered in any state or federal court of competent jurisdiction.

**(h)** **Payment of Fees. The payment of all fees for registration, filing and administration of the arbitration, and the payment of arbitrator fees, shall be governed by the AAA Rules** and applicable law, unless otherwise stated in this Agreement. The Parties shall bear their own legal fees and legal expenses for any arbitration proceeding.

**(i) Notice and Good Faith Negotiation.** Any Party intending to file an arbitration demand against the other Party must notify the  other Party at least thirty (30) days before filing. The Parties agree to attempt to negotiate a mutually agreeable resolution to resolve any such dispute or claim during this period. If a Party filing an arbitration demand fails to provide that notice, the other Party is entitled to seek a stay of the arbitration proceeding from the AAA for thirty (30) days and to participate in settlement negotiations during that period in good faith.

(Emphasis supplied where words underlined.)

13.  The language of this clause does <u>not</u> give Wyndham the choice of whether or not to

arbitrate any given case.   It requires that Wyndham arbitrate every case:

- Disputes <u>must</u> be resolved by binding arbitration;

- Disputes, claims, suits, demands or controversy arising out of or relating to this

  Agreement <u>shall be determined exclusively</u> and finally by individual arbitration;

- Any Disputes <u>will be</u> arbitrated;

- The arbitration <u>shall be</u> administered by the AAA under its Consumer Arbitration

  Rules; and,

- The payment of all fees for registration, filing and administration of the arbitration

  and the payment of arbitrator fees <u>shall be</u> governed by the AAA Rules.

14.   The limited carve outs for actions such as foreclosure proceedings are not applicable here.

15.   In compliance with the mandatory arbitration clause, Plaintiffs Bedgood and Brandon filed consumer arbitration demands against Wyndham.

16.   The AAA declined to administer the disputes and will not hear <u>any</u> arbitrations between Wyndham  and <u>any</u> consumers.   The AAA removed Wyndham from its Consumer Clause Registry on its website, [www.adr.org/clauseregistry](www.adr.org/clauseregistry).  This Registry lists all companies that have valid consumer arbitration clauses on file with the AAA.  Nor is WorldMark is on the Registry.   Customers of Wyndham and WorldMark have to proceed in court to resolve their disputes.

17.  Plaintiffs Brandon and Bedgood received the same letter from the AAA.  Brandon's letter (**Exhibit A**) reads in relevant part as follows:

December 30, 2020

Joel Brandon

xxxxxxx

Dunn, NC 28334

Via Email to: joelbrandonxxxxx

WYNDHAM Destinations
6277 Sea Harbor Drive
Orlando, FL 32821

Via Mail

Case Number: 01-20-0016-0486

Joel Brandon

-vs-

WYNDHAM Destinations

Dear Parties:

Claimant has filed with us a demand for arbitration. We note that the arbitration clause provides for arbitration by the American Arbitration Association ("AAA").

Prior to the filing of this arbitration, WYNDHAM Destinations failed to comply with the AAA's policies regarding consumer claims. Accordingly, we must decline to administer this claim and any other claims between WYNDHAM destinations and its consumers at this time. These policies can be found on our web site, www.adr.org, in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration.

Accordingly, we have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

Sincerely,

Consumer Filing Team
ConsumerFiling64adr.org
Fax: (877) 304-8457

18.   The Diaz/Clark WorldMark contract has no class action waiver clause.   The Wyndham contracts have class action waiver clauses,  jury trial waiver clauses and punitive damage exclusion clauses.   These clause are separate from the arbitration clause.  (See e.g. ¶¶  35, 36, 38 of Brandon contract, **Exhibit F**).  The clauses do not apply.  The clauses start with the conditional prefatory language   "TO THE EXTENT A CLAIM OR DISPUTE IS NOT SUBJECT TO THE ARBITRATION PROVISION IN PARAGRAPH 34", the right to file a class action or have a jury trial is waived.  Plaintiff's claims and disputes with Defendants were subject to the arbitration provision of paragraph 34.   Thus, the claims were arbitrable but for Defendants' actions.  The class action and jury trial waiver clauses are not enforceable.

19.   Further, since Plaintiffs' contracts were induced by fraud, the class action waiver clause, the jury trial waiver clause, and punitive damage exclusion clause  are not enforceable since the entire agreements are voidable.   Plaintiffs demand cancellation and rescission of their contracts with a refund of all monies paid to Defendants.

**PARTIES**

20.   Charles Harold Bedgood is a resident of Alabama.   He signed a Wyndham contract on December 19, 2019 in Tennessee.  (**Exhibit E**) The purchase price was $23,000.  His wife Linda Lynn also signed the contract, but they are now divorced.  She assigned all her rights and duties to Charles as part of the divorce.  She is not a necessary party to this action.

21.   Joel Brandon and Hannah Heil-Brandon are residents of North Carolina.  They signed a Wyndham contract on December 19, 2019 in South Carolina.  (**Exhibit F**) The purchase price was $16,500.

22.   Eddie Mathews Jr. and Reena T. Smith are residents of Illinois.   They signed a Wyndham contract on March 18, 2019 in Louisiana.  (**Exhibit G**) The purchase price was $19,500.

23.   Justin Diaz and Candice Clark are residents of New York.  They signed a  WorldMark/WRDC contract on April 6, 2018 in Nevada.  (**Exhibit H**) The purchase price was $39,396.65.

24.   Roslind Christine Harper is a resident of Hawaii.  She signed a Wyndham contract on July 8, 2019 in Nevada.   (**Exhibit I**) The purchase price was $15,000.

25.   Defendants have their corporate headquarters and principal offices at 6277 Sea Harbor Drive, Orlando, FL 32821.

26.   Wyndham is a Delaware corporation. WorldMark is a California nonprofit mutual benefit corporation. WRDC is an Oregon corporation.

**JURISDICTION AND VENUE**

27.   This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2).   This is a civil action in which the matter in controversy exceeds the value of $5,000,000, exclusive of interests and costs.   At least one class member is a citizen of a state that is different from the state of citizenship of Defendants.

28.   Venue is appropriate in this District under 28 U.S.C. § 1391 since all Defendants maintain their principal place of business here.

## FACTUAL ALLEGATIONS

29.   Wyndham's parent company, Wyndham Destinations Inc. now known as Travel + Leisure Co., trades on the New York Stock Exchange under the ticker name WYND.  It is the largest timeshare ownership program in the world with 925,000 members and over $5 billion in revenue in 2017.  It develops and operates a portfolio of over 220 resorts throughout the world with 25,000 individual units.   WorldMark is one of the brands of Wyndham Destinations.

30.   Wyndham markets and sells vacation ownership interests in the form of points, provides consumer financing in connection with the sale of points, provides property management services to the purchasers, and develops and acquires vacation ownership resorts.

31.   In the traditional timeshare business model, a participant purchased a fractional interest in a specific piece of property.   The member would own the right to a specific week of occupancy in a particular unit in a specific identified property.  The participant could then be entitled to trade that week of ownership for a week in another property.   However, if the member did not trade his or her week, he or she was guaranteed the right to stay in the identified week in the identified property.

32.   In the Wyndham model, participants purchase points which are supposed to be currency to stay at any Wyndham or affiliated resort throughout the world.  Fundamental to the Wyndham sales and marketing pitch is that purchasers will have a dizzying array of choices and will be able to stay at their desired property wherever it might be.

33.  Purchasers buy points so they can travel to their desired location whether it is Scotland, Colorado, Hawaii or some other place.  In fact, desired destinations are not available at the desired time and have to be booked sometimes as much as a year in advance, assuming they are even available.  The sales pitch is false and misleading.

34.  The business practice of Wyndham is to focus on selling points, rather than managing the destinations and making them available to members.  Wyndham makes more money by selling new timeshares than by making accommodations available to existing timeshare Owners. Plaintiffs and Wyndham members find that there is little availability.   When they complain, Wyndham's response is that they need to buy more points.

35.  Wyndham members are subject to a lifelong frenzied marketing pitch to buy more points and upgrade their membership.  When a member arrives for a vacation at a destination, the sales pitch starts before they have even parked their car.   A common Wyndham ploy is not to give a parking pass to a member until they agree to attend an "Owner update meeting."  The purported Owner update meeting is nothing more than another high-pressure sales presentation to get them to buy more points.

## THE FORMAT OF WYNDHAM'S DECEPTIVE SALES PRESENTATIONS

36.  In order to proceed with a case where a class can be certified, Plaintiffs focus on the single, common fraudulent scheme of the material omission concerning availability.  The Rule 9(b) fraud pleading requirements of the who, what, when, where and how for each Class Representative are set forth below in paragraphs 43-49.  No plaintiff was told that desired destinations would be unavailable.

37.  Wyndham's sales presentations follow the same structure.   Subparagraphs (a) to (m) are included as background prior to pleading the single, fraudulent omission.

10

a.  Plaintiffs were enticed to attend their meetings by the offer of a "free" coupon, gift or prize such as free tickets to attend a show or a free three night stay at a resort;

b.  Plaintiffs were told that in exchange for this "free" prize, they would need to attend a ninety-minute timeshare sales presentation.  This was a lie because Wyndham and WorldMark know full well that the sales presentations would last from three to six hours or longer;

c.  A podium presenter gave a presentation to a group of potential Owners including the Plaintiffs;

d.  The podium presenter said that over their lifetimes that by buying a Wyndham timeshare, Plaintiffs would save tens of thousands of dollars, that they would be able to travel around the world, and would be able to stay at luxury resorts;

e.  Plaintiffs were given a tour of the Wyndham resort where their sale presentation occurred to show them the type of luxury accommodations where they would be able to stay at;

f.  Plaintiffs were assigned one sales person who sat with them at a table with no other customers to make a one-on-one high pressure sale pitch;

g.  Their sales person sought to befriend them;

h.  One element of the sales pitch was that Plaintiffs were told that they should buy for the sake of their children (or future children) and to spend time with their families;

i.  A tag team approach was used when Plaintiffs were showing any resistance, their sales person would say "let me have you talk to my supervisor Bob or colleague Joe";

j.  Plaintiffs were given the business card of their sales person with his or her cell phone number on it and the sales person promised to be the personal representative of the Plaintiffs after their purchase;

k.  Plaintiffs were told they could call their salesperson at any time to get help navigating the Wyndham system, to learn how to use their points, and how to get availability at the choicest destinations;

m.  A false sense of urgency was created with repeated use of phrases such as "one time offer" and "today only" to create the impression that Plaintiffs would not  have the same opportunity again; and,

n.  Nowhere during this process was it disclosed that resorts would be systematically unavailable or overbooked – rather the sales pitch was the opposite – that Plaintiffs would be able to vacation at numerous resorts throughout the world.

38.  Judge Dalton's Order in *Buxton*, *supra*, gave an overview of the sales process which is equally applicable here:

> Defendants invited the Buxtons, who were vacationing in Orlando, Florida, to a presentation about Defendants'  programs that would last no longer than ninety minutes. But the presentation was not as advertised. It lasted multiple hours…

> In all the cases, at the presentations, the Sales Agents told Plaintiffs: the deal was good only for day; the Sales Agents would be Plaintiffs' personal representatives, helping them to make the most of their timeshare; the timeshare was a good investment and Plaintiffs could rent out their timeshares to cover all costs.  But these statements weren't true and the Sales Agents knew it.  The Sales Agents also exaggerated the usefulness of points and reservation availability to stay at resorts. Plaintiffs all relied on these statements in purchasing timeshares.
> (**Exhibit D** at 5-6.)

39.  Judge Dalton goes on to describe how the contracts are signed:

> And when the time came to sign the timeshare contracts, the Sales Agents did not adequately explain Plaintiffs' rescission rights, rushed the closing process, and told Plaintiffs where to sign and initial without explaining what Plaintiffs were signing. *Id*. at 6.

40.  The timeshare documents which each Plaintiff signed consists of dozens of pages.

Their sales people did not give them the opportunity to read the documents.   Instead, the sales people flipped the pages, purported to summarize pages and contract provisions, and pointed at places for signatures or initials, telling Plaintiffs to "sign here" or "initial here".

41.  Plaintiffs' timeshare contracts incorporate by reference other documents including the ClubWyndham Access Vacation Ownership Plan, Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for ClubWyndham Access Vacation Ownership Plan, ClubWyndham Access Public Offering Statement, Articles of Incorporation, By-laws, and Regulations of the Association, Trust Agreements, and Club Property Instruments.

42.   The ClubWyndham Access Vacation Ownership Plan's governing documents includes Declaration of Trust, First Amendment to the Declaration of Trust, Amended and Restated Declaration of Covenants, Conditions and Restrictions and Grant and Reservation of Easements, PTVO Owners Association, Inc. Articles of Incorporation, PTVO Owners Association, Inc. By-laws, Association Administration and Management Agreement, Rules and Regulations, Property Declaration for ClubWyndham Access Vacation Ownership Plan (Pro-forma Copy), PTVO Owners Association, Inc. Regular Assessment, and PTVO Owners Association, Inc. Audited Financial Statement.

43.  In short, prior to purchasing their timeshares, it was physically impossible for Plaintiffs to read the hundreds of pages of documents.

**The Common Material Omission -   Who, What, When, Where and How**

44.  In *Buxton*, Judge Dalton wrote,

There are multiple ways to satisfy Rule9(b) and Plaintiffs' allegations sufficiently put Defendants on notice of the alleged misconduct. (Citation omitted.)  Plaintiffs have alleged *who* is responsible for the misrepresentations: either identifying the Sales Agents by name or specifying the presentation's date, location and resulting transaction contract number.  Plaintiffs also list the specific statements they relied on in buying timeshares. … Plaintiffs' allegations – that they purchased timeshares

at specific presentations because of the Sales Agents' specific misstatements – adequately detail how Plaintiffs were misled.
*Buxton* Order, *supra*, at 9 – 10.

45.   **Plaintiff Charles Bedgood -**   Charles is a 76-year-old retired pharmacist.   On December 19, 2019, he attended a Wyndham sales presentation in Nashville, Tennessee.   The Wyndham Sales Agent was Alexis Brooks.   The Wyndham sales representatives were, Melody Palmer, James Spencer and Brandon Reavis.   They induced him to enter into Wyndham Contract Number 00019-1902720.1   The purchase price was $23,000.   Wyndham's agents omitted to tell Bedgood that destinations he desired would not be available and that he would not be able to use his timeshare to make reservations where he wanted.   He relied on that omission to his detriment. Had the true facts about availability been disclosed to him, he would not have purchased the timeshare.   He has not used the timeshare.   He has an approximate balance due of $17,000.   He is continuing to make monthly minimum payments.   Wyndham refused his request for cancellation.   He then filed an arbitration demand with the AAA on January 26, 2021, Case No. 01-21-0000-3547.   Wyndham refused to pay its arbitration fees.   By letter dated February 24, 2012, the AAA advise Bedgood that Wyndham failed to comply with AAA rules regarding consumer claims.   The AAA declined to administer Bedgood's claim and told him he could submit his dispute to the appropriate court for resolution.   As of the date of this Complaint, Wyndham is not on the list of companies who have consumer arbitration clauses on file with the AAA.

46.   **Plaintiffs Joel Brandon and Hannah Heil-Brandon -** Joel is a mechanical engineer. Hannah is a self-employed esthetician.   On or about May 21, 2019, Joel and Hannah attended a Wyndham sales presentation at Wyndham Ocean Ridge, Edisto Island, South Carolina.   Their sales representative was Taylor Walsh King.   They signed Wyndham Contract Number 00015-1900241

---

1 Bedgood's wife Linda Lynn was also on the contract.  They have since divorced and as part of their divorce agreement, Linda Lynn assigned all her rights and duties under the Wyndham contract to Bedgood.

with a total purchase price in the amount of $16,874. King omitted to tell Joel and Hannah that the destinations they desired would not be available and that they would not be able to use their timeshare to make reservations where he wanted.   They relied on that omission to their detriment. Had the true facts about availability been disclosed to them, they would not have purchased the timeshare.   They have not been able to book where they wanted.   They have an approximate balance due of $10,329.   Wyndham refused their request for cancellation.   Joel then filed an arbitration demand Case Number 01-20-0016-0486 with the AAA.   Wyndham refused to pay its arbitration fees.   By letter dated December 30, 2020, the AAA advised Joel that Wyndham failed to comply with AAA rules regarding consumer claims.   The AAA declined to administer Joel's claim and told him he could submit his dispute to the appropriate court for resolution.   As of the date of this Complaint, Wyndham is not on the list of companies who have consumer arbitration clauses on file with the AAA.

47. **Plaintiffs Eddie Mathews Jr. and Reena T. Smith -** Eddie and Reena work various jobs including event planning, photography and bar tending in the Chicago area.   On or about March 18, 2019, Eddie and Reena attended a Wyndham sales presentation at a Wyndham property in New Orleans, Louisiana.   Their sales representative was Cherine A Hafez.   They signed Wyndham Contract Number 00074-1900323 in the amount of with a total purchase price of $19,874.   Hafez omitted to tell them that the destinations they desired would not be available and that they would not be able to use their timeshare to make reservations where they wanted.   They relied on that omission to their detriment.   Had the true facts about availability been disclosed to them, they would not have purchased the timeshare.   They have not been able to book where they wanted.

48.   **Plaintiffs Justin Diaz and Candice Clark -** Justin works as private health aide. Candice is a secretary. On or about March 18, 2019, Justine and Candice attended a sales presentation at Wyndham Grand Desert in Las Vegas, Nevada.  They signed WorldMark Contract Number 001231810839 with a total purchase price of $46,349.  Their sales representative omitted to tell them that the destinations they desired would not be available and that they would not be able to use their timeshare to make reservations where they wanted.   They relied on that omission to their detriment.   Had the true facts about availability been disclosed to them, they would not have purchased the timeshare.  They have not been able to book where they wanted.  They found that they could never get availability.  They have never used the timeshare.

49.   **Plaintiff Roslind Harper -**   Roslind is a single mother of eight children including one with special needs.   She lives in Hawaii and works as a nurse.  It will be a serious hardship for her to have to fly to Orlando to testify.  She requests that any testimony by her in this case be by zoom or similar video link and videotaped if needed. On or about July 8, 2019, Roslind  attended a Wyndham sales presentation at a Wyndham property in Las Vegas, Nevada.   Her sales representative was Will Dudley.  She signed Wyndham Contract Number 00123-1901262 in the amount of $15,000.   Dudley omitted to tell her that the destinations she desired would not be available and that she would not be able to use her timeshare to make reservations where she wanted.   She relied on that omission to her detriment.   Had the true facts about availability been disclosed to her, she would not have purchased the timeshare.  She has not been able to book where she wanted and has made numerous unsuccessful attempts to cancel her timeshare.

## THE OMISSIONS ALLEGED HERE ARE TYPICAL and COMMON FOR THE CLASS

50.   The omission made to Plaintiffs concerning availability is typical for  other Class Members.  The same omission is made time and again with uncanny regularity to Class Members.

A public records request to the State of Florida, Division of Consumer Services, revealed consumer after consumer complaining of lack of availability of destinations.   Plaintiffs are informed and believe that a contributing factor to the lack of availability is overselling by Wyndham, ie. that it sells more timeshare points than are possible to use at certain locations.

51.   There has been a tsunami of Class Member complaints about Wyndham and WorldMark.   In the three years alone, the Better Business Bureau has received 2,165 complaints about Wyndham.   The website http://www.timeshareconsumerbureau.com has over 1,000 complaints about Wyndham.   Owners routinely complain that a requested property is not available through the Wyndham timeshare program, but can be booked outside the program through public websites such as trivago.com or booking.com.

52.   Wyndham Owners and putative Class Members have posted repeatedly on consumer complaint boards about the availability omissions and the reality of no availability.   Here are but a few examples:

> a.  Cinthia from Wilder7/9/2019 11:07:24 am
>
> https://www.youtube.com/watch?v=p-wWsEXC9f4&t=16s
>
> Some misrepresentations and omissions they left out to get us to pay for this ridiculousness:
>
> -Friends and family can go on vacation, HOWEVER WE HAVE TO BE PRESENT.
>
> -They did not tell us most locations are booked like a year in advance. We cannot book our vacations like that with our work.
>
> http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
>
> b.  Wyndham Vacation Resorts / Timeshares / scam promise!
>
>  US Review updated: Jul 10, 2019
>
> I am completely appalled by what I am about to tell you. Purchased a timeshare from fairfield fairshare plus resorts currently doing business as wyndham vacation resorts, rci, cendant inc (parent company). Being skeptical about the ease and worry free vacation promise, they promised big vacation savings, convenience, flexibility, and great customer service. All false. My main contention for buying this timeshare

was my inability to use it yearly and lengthy advance reservations. "no problem, you can bank up to 4 years of unused timeshare, " they preached.

https://www.complaintsboard.com/complaints/wyndham-vacation-resorts-timeshares-c59202.html

c.  JANHEE3/13/2019 07:38:08 pm

Help! we just signed up for time share with Wyndham Feb 2019 while on vaca in So Carolina. Got home-two days later I went online to see what vaca we will take-so disappointed. Georgia has only one and I need 3 bedroom-**no week open** until dec 2019!! We were told-no problem booking EVER..except around holidays--then you should book a few months. Tried to cancel-but we were TWO days out of the 5 day contract period. Now they say..too bad--you pay us the $30,000 and monthly maintenance. This is wrong-they are not giving what they promised to us. Help! How can I get out of contract? any advice? thanks

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam


d.  Carrie of Bothell, WA Verified Reviewer

Original review: Aug. 1, 2019

We purchased this timeshare because of the promise of increased ability to vacation with our kids or even get away alone every once now and then. It's been absolutely the opposite. It's impossible to navigate the system, **dates are always blocked out through the owner site but available on public sites**, membership doesn't even cover vacation so you have to upgrade to get any use out of it, and the customer service provided is abysmal. We regret this purchase so much and wish there was a way out of it.

https://www.consumeraffairs.com/travel/wyndham_vacation_resorts.html


e.  Butch4/3/2018 04:40:33 pm

Get this, I just checked on a room at Wyndham Myrtle beach through Trivago for late June, no problem getting one. Tried to book a room through Wyndham for the same date, **none available**.

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam

f.  Tamela Gx7/9/2019 12:24:04 pm

**It took us 2 years just to book a vacation** with our ownership. While on vacation when we aired our grievances to Wynhdam, they suggested we upgrade to alleviate our problem and we listened, however, we still could not book. ....
This company should be illegal. $40,000 for 5 nights of vacation.
http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam

## CLASS ACTION ALLEGATIONS

53. Plaintiffs seeks to represent the following class under F.R. Civ. Pro. 23(b)(2):

All persons who signed Wyndham or WorldMark timeshare agreements in the last five years who have arbitration clauses in their contracts.

54. Plaintiffs seek to represent the following class under F. R. Civ. Pro. 23 (b)(3):

All persons who signed Wyndham or WorldMark timeshare agreements in the last four years who have arbitration clauses in their contracts and have unsuccessfully requested cancellation of their timeshare contracts.

55. Plaintiffs reserve the right to modify the Class definition as they obtain further information through discovery.

56. Excluded from the Class are Defendants and entities in which Defendants have a controlling interest, its agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff or immediate family.

57. The number of Class Members is believed to be in the hundreds or more, making the class so numerous that individual joinder of all Class Members is impracticable.

58. Plaintiffs are members of the proposed Class.

59. There are questions of law and fact common to Plaintiffs and to the proposed Class, including but not limited to the following:

a. Whether the arbitration clause has been breached by Wyndham and WorldMark;

b. Whether the arbitration clause is enforceable;

c. Whether the class action waiver clause and jury trial waiver clause are enforceable;

d. Whether material omissions were made to Class Members at sales meetings;

e. Whether Wyndham's and WorldMark's actions have damaged Plaintiffs and Class Members;

f. Whether Plaintiffs and Class Members are entitled to cancel their Agreements; and,

19

g.   Whether Plaintiffs and Class Members are entitled to declaratory, injunctive and equitable relief to stop further unlawful acts.

60.  Plaintiffs' claims are typical of the claims of Class Members.

61.  Plaintiffs' interests do not conflict with those of Class Members.   They will fairly and adequately protect the interests of Class Members.

62.  Plaintiffs are represented by counsel experienced in class action litigation.  Plaintiffs' counsel filed two pending class actions, *Kirchner v. Wyndham Vacation Resorts, Inc.,* (No. 20-cv-00436))  and *DuBose v. Wyndham Vacation Resorts, Inc.* (No. 20-cv-0118) ,  in the U.S. District Court in Delaware for Wyndham Owners who signed contracts in Tennessee, Nevada and Florida <u>without</u> arbitration clauses.   Those cases were filed in 2020.  Motions to dismiss have been fully briefed.   The instant case is for Owners <u>with</u> arbitration clause.  The Delaware cases are an outgrowth of the *Deneen v. Wyndham Vacation Resorts, Inc.* (No. 19-cv-5499) filed in the Northern District of Illinois in 2019 – also for persons without arbitration clauses.   The *Deneen* Court dismissed without prejudice for lack of personal jurisdiction.  Class discovery was well underway in *Deneen*.  Wyndham was ordered to produce tens of thousands of documents, including customer files, after Plaintiffs had to file a motion to compel discovery.

63.   Common questions of law and fact predominate over questions affecting only individual Class Members, and a class action is superior to other methods for the fair and efficient adjudication of this controversy.

64. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small due to the time and expense necessary to pursue individual litigation.  Management of these claims in a class action poses no significant impediments.

65.   Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

## Punitive Damages Should Be Assessed

66.   Plaintiffs' contracts purport to exclude punitive damages, but the contracts are voidable.   For nearly twenty years, Wyndham has been sanctioned for its deceptive practices through state government penalties, orders requiring rescission of purchase contracts and a $20 million verdict in a whistle blower case.   Instead of reforming its practices, it has doubled down on its deceptions. The only way that Wyndham will bring honesty to its sales practices is if punitive damages are assessed.   Since Plaintiffs' contracts are voidable and rescindable, the clause limiting punitive damages does not apply.

67.   Since 2003, there has been a steady drum beat of adverse awards against Wyndham as well as settlements forcing it to pay damages, penalties and grant rescission.

68.   In October 2003, the California Attorney General and the District Attorney for the County of San Mateo sued Trendwest Resorts, the predecessor of Wyndham, for its unlawful sales practices and material misrepresentations.   The case was settled with Trendwest agreeing to an injunction barring it from further violations and requiring it to offer rescission to customers. It also had to pay $795,000 in civil penalties.   The estimated total value of the settlement was $ 4.3 million.   The California Attorney General issued a Press Release about the settlement saying Trendwest [predecessor to Wyndham] misled consumers through deceptive sales practices and non-disclosure, and illegally denied consumers the ability to cancel their contracts. Trendwest Will Pay Restitution to Consumers and $795,000 in Civil Penalties, October 29, 2003, https://oag.ca.gov/news/press-releases/attorney-general-lockyer-settles-lawsuit-against-one-worl

ds-largest-timeshare. (Last visited August 10, 2019.)

69.   In 2007, California customers sued Wyndham in a class action.   The case settled on a class basis.  *(Wixon et. al. v. Wyndham Resort Development Corp.*, N. D. Cal.  Case No. C 07-02361.)   The settlement class consisted of California residents and persons who entered into transactions in California, who bought Worldmark timeshare interests from Wyndham.   The settlement was for persons who purchased timeshares before November 5, 2006.   Wyndham agreed to cancel 22 million vacation credits; it made changes to its timeshare program; and it agreed to pay class counsel up to $5 million in legal fees.

70.   In 2015, the State of Wisconsin sued Wyndham for rescission of timeshare purchase contracts with 29 owners.  As part of a settlement, Wyndham agreed to pay $665,000 in restitution, a $99,520 civil fine, $62,702.20 in fees and costs, and to rescind the contracts.   (Sauk County Wisconsin Case No. 2015CX000005).   The Wisconsin Department of Agriculture, Trade and Consumer Protection alleged that Wyndham sales personnel had made misrepresentations inconsistent with purchase contracts, telling customers gift incentives were available for one day only, and not disclosing on first contact with prospects that a timeshare sale was being offered. The restitution and debt relief was $84,698 for one Madison, Wisconsin couple.   After the settlement, Wyndham issued a press release promising to meet the highest standards of fairness and transparency to consumers.

https://www.wiscnews.com/news/local/crime_and_courts/wyndham-settles-consumer-complaints-for/article_c041b926-efda-53da-8d61-5560c7fc3718.html (Last visited August 13, 2019.)

71.   In 2016, a Wyndham whistle blower employee was awarded $20 million *(Williams v. Wyndham Vacation, Ownership, Inc.*,  San Francisco Superior Court,  Case No. CGC- 12-526187) after being wrongfully terminated.  The whistle blower exposed that Wyndham defrauded elderly

customers, opened and maxed out credit cards without their knowledge, and lied about fees.   In its rulings on post-trial motions, the court found that Wyndham's San Francisco site was defrauding many customers, mainly the elderly.

72.   What does not fully come through in legal pleadings such as this is that real people, often senior citizens, have suffered real damage due to Defendants' fraud.   What follows is a snippet about real people who have posted their narratives of Wyndham fraud on youtube.com, including their statements that destinations are never available.   These narratives are referenced here to show that Wyndham acted willfully, wantonly and maliciously towards the Class.   Further, the narratives establish the typicality of Plaintiffs' claims.   The narrative of Margaret Chandler cited  below parallels the key allegations of this Complaint.

73.   WTVF, Channel 5, Nashville, Tennessee has run at least two investigative reports on Wyndham's deceptive practices.   The video referenced below was published on youtube.com  on May 3, 2018 and has received over 42,000 views.   Doyle and Mindy Campbell attended a Wyndham timeshare presentation at a Wyndham location in Nashville depicted below.   They were offered a prize to attend a "ninety-minute" timeshare presentation.   The presentation actually took several hours.   They also allege that Wyndham opened  a $15,000 line of credit without their knowledge.



Couple Goes To Wyndham Timeshare Meeting, Unknowingly Gets $15K Line Of Credit

https://www.youtube.com/watch?v=zmRdKFWV30Q&t=12s



Couple Goes To Wyndham Timeshare Meeting, Unknowingly Gets $15K Line Of Credit

42,707 views • May 3, 2018                    235  32  SHARE  SAVE  ...

74.   Another investigative news report by Nashville Channel 5 referenced below includes an interview of 76 year-old widow Mildred Folds who went $175,000 into debt after buying Wyndham timeshare points.   Houston and Brenda Garvin are also interviewed. They lost over $600,000.  These Owners sued Wyndham for theft by conversion and other fraud related claims. They complained of lengthy high pressure sales meetings with being told to "sign here" and "sign there" when it came time to review their contracts.



Elderly Claim Timeshare Company Scammed Them
https://www.youtube.com/watch?v=SVh3dgi_-Ec

75.   The next video depicted below was posted on March 26, 2018 by Margaret Chandler. She is a retired  school teacher.  Her husband Ed is a retired carpenter and a Vietnam veteran. They were 71 years old at the time of the video.  She states that Wyndham took money from them dishonestly.  A Wyndham representative in Las Vegas offered them free tickets to a show for attending a short timeshare presentation.   It was promised to last no more than sixty minutes.  It actually went on for hours.  Their salesperson Aretha befriended them and started calling Margaret,

"Mom".   What Margaret recounts is exactly what happened to the Class Representatives in this

case. "They [Wyndham sales people] told us we could book anywhere at any time".  (3:19 in

video.)   "Nothing is ever available".   (7:47 in video.) "We had been lied to." (7:58 in video.)

"Nothing you are told is true." (8:40 in video). "Wyndham does not care.  They just move on to

the next victim."   (9:05 in video). See https://www.youtube.com/watch?v=WwnQ_2RCwF0.



Wyndham timeshare scam warning

21,427 views • Mar 26, 2018                         👍 376   👎 11     ↱ SHARE    ≡+ SAVE    •••

**T**   Timeshare Truth                                      SUBSCRIBE
        312 subscribers

        We are senior citizens and my husband is a veteran. This did not stop Wyndham from defrauding
        us of our hard earned retirement money.

76.  On February 19, 2019, senior citizen and disabled military veteran Master Sergeant

Jim Sherwood posted the following video about his Wyndham experience.

https://www.youtube.com/watch?v=YEHBhtGlbQI&t=10s.  He ended up in a five- hour

Wyndham sales presentation.  He felt defrauded by Wyndham who would not acknowledge his

disability when he tried to cancel his contract.  His credit report was affected.  "These actions [of

Wyndham] in my opinion are fraud".  (4:17 in video).

26



Wyndham Review scam fraud

2,275 views · Feb 19, 2019

👍 44    👎 4    ↱ SHARE    ≡+ SAVE    ···

**J**   **Jim Sherwood**    **SUBSCRIBE**
4 subscribers

Wyndham Vacations scam fraud. Buyer beware. I am a senior and a 100% disabled Marine vet.
Wyndham should be ashamed of how they treat people. Do your due diligence with these people.

77.   Numerous other Wyndham Owners have recorded and posted their experiences of Wyndham's fraudulent sales practices.

### COUNT ONE- RULE 23(b)(2) CLASS - BREACH OF CONTRACT

78.   Plaintiffs repeats and realleges paragraphs 1 to 82.

79.   Plaintiffs signed form contracts with Defendants.

80.   The contracts require arbitration of all disputes.

81.   Wyndham materially breached the contracts with Bedgood, Brandon and Heil-Brandon by failing to comply with AAA Rules.   The AAA refused to administer the arbitrations. It would be an act of futility for Mathews, Smith, Diaz, Clark and Harper to file arbitration

demands with the AAA because Defendants' arbitration clause is not listed on the Consumer Clause Registry of the AAA.

82. Plaintiffs' contracts are voidable.  They demand rescission for themselves and all Class Members who have the arbitration clause.

83. The class action waiver clause, and the jury trial waiver clause in the form contracts of Wyndham and WorldMark should be declared null and void.

## COUNT TWO- RULE 23(b)(3) CLASS – FRAUDULENT INDUCEMENT BY OMISSION

84. Plaintiffs repeat and realleged paragraphs 1 to 83.

85. The foregoing omission and non-disclosure by Defendants were materially false.  The identical material omission for all Plaintiffs and Class Members establishes the existence of a single common fraudulent scheme.  Courts in the Eleventh Circuit and elsewhere have certified class actions which involve a single common scheme and plead common law fraud.

86. Defendants knew of the falsity of the omission or were recklessly indifferent to its falsity.

87. Defendants intended that Plaintiffs and Class Members rely on the omission.

88. Plaintiffs actually and justifiably relied on the misrepresentations and omissions and thereby sustained injury.

89. By reason of the omission, Plaintiffs and Class Members were fraudulently induced to enter into contracts with Defendants.

90. Defendants' actions were willful, wanton and malicious so as to allow the recovery of punitive damages.  The contract's punitive damages exclusion fails since the contract is voidable.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief on behalf of themselves and all others similarly situated:

A.  An order certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiffs and their counsel to represent the Classes;

B.  For an order that Defendants be permanently enjoined from engaging in the unlawful activities and practices complained of;

C.  For a declaration that the arbitration, class action waiver and jury trial waiver clauses in Plaintiffs and Class Member contracts are null and void;

D.  For an injunction against Defendants entering into new contracts which have AAA consumer arbitration clauses;

E.  For cancellation of all Class Member contracts with Defendants;

F.  For restitution of all monies paid to Defendants;

G.  For compensatory damages; and,

H.  For punitive damages.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Plaintiffs,

/s/*Howard B. Prossnitz*
Howard B. Prossnitz, Esq, FBN 60031
**Law Offices of Howard B. Prossnitz, P.L.L.C.**
1014 Ontario Street
Oak Park, IL 60302
prossnitzlaw@gmail.com
Phone: (708) 203-5747

29

Adam Szulczewski, Esq.
1421 West Fletcher Street, 1 F
Chicago, IL 60657
(248) 930-6001
(*Pro hac vice* motion to be filed)
szulcze@outlook.com


*Counsel for Plaintiffs*

Dated:  March 3, 2021