Exhibit B

Exhibit B

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FIFTEENTH JUDICIAL CIRCUIT |
| COUNTY OF HORRY | ) | CASE NO.: 2020-CP-26-07441 |
| | ) | |
| James M. Reynolds and Judith A. Reynolds, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER DENYING DEFENDANTS** |
| | ) | **MOTION TO DISMISS AND** |
| Wyndham Vacation Resorts, Inc. and | ) | **COMPEL ARBITRATION** |
| PTVO Owners Association, Inc., | ) | **AND DENYING DEFENDANTS'** |
| | ) | **MOTION TO DISMISS CERTAIN CLAIMS** |
| Defendants. | ) | |

This matter came to be heard before me, by way of WebEx, on Defendants' Motion to Dismiss and Compel Arbitration or, in the alternative, to dismiss certain claims pursuant to Rule 12(b)(6).

Defendants Wyndham Vacation Resorts, Inc. and PTVO Owners Association, Inc. ("Wyndham" or "Defendants"), moved to dismiss Plaintiffs' Complaint and compel arbitration, pursuant to Rue 12(b)(1) of the South Carolina Rules of Civil Proce lure (SCRCP) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* or, in the alternative, to dismiss Plaintiffs' Fourth Cause of Action for failure to state a claim upon which relief can be granted and other claims based on the statue of limitations, pursuant to Rule 12(b)(6), SCRCP.

## I.   FACTS

These claims arise out of Plaintiffs' purchases of certain timeshare interests from Wyndham. Plaintiffs allege that on or about April 13, 2013, they purchased a timeshare interest from Wyndham in Williamsburg, Virginia. During a visit to Myrtle Beach, South Carolina, Plaintiffs traded in their April 13, 2013 contract and the associated 63,000 points to make a second timeshare purchase for 191,000 points on December 7, 2018.

1

Exhibit B

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441

The 2018 contract contains a pre-dispute arbitration clause which provides that any dispute related to such respective contract or the "marketing, purchase and/or use" of Plaintiffs' timeshare purchase "shall" be resolved by binding arbitration:

6.   **DISPUTE RESOLUTION/ARBITRATION.** Any disputes between the parties shall be resolved as follows:

   a.   **Definition of Disputes.** The parties agree that any dispute, claim, suit, demand, or controversy arising out of or relating to this Agreement (any "Dispute") shall be determined exclusively and finally by individual arbitration, except as specified below. "Dispute" includes, without limitation, any claim regarding any breach, termination, enforcement, interpretation or validity of this Agreement, any claim arising out of or related to the marketing, purchase and/or use of BUYER'S Ownership, BUYER'S use of SELLER'S properties and/or BUYER'S participation in any activities/events sponsored, organized, or made available by SELLER or any of its affiliates.

   ...

   e.   **Application Rules/Location.** This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*). The arbitration shall be administered by the American Arbitration Association ("**AAA**") under its Consumer Arbitration Rules available online at www.adr.org or by calling the AAA at 1-800-778-7879 (the "**AAA Rules**"). **The arbitration shall be held in the County of Orange, State of Florida unless the Parties agree to another location in writing, or the arbitrator decides to hold a telephonic hearing to reach a decision based solely on the parties' submission of documents, or to designate another location reasonably convenient for the Parties.** In the event of any conflict between the AAA Rules and this Agreement, the provisions of this Agreement shall be controlling.

Wyndham's contract provides that arbitration "shall" be administered exclusively by the American Arbitration Association (AAA) under its Consumer Arbitration Rules, and that the arbitration would be conducted in Orange County, Florida.

## II.   LEGAL STANDARD

Prior to 1925, the Courts were not inclined to enforce pre-dispute arbitration agreements and routinely struck them down. In order to provide for enforcement of commercial arbitration agreements, Congress passed the Federal Arbitration Act in 1925. See, e.g., Southland Corp. v.

Exhibit B

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441

Keating, 465 U.S. 1 (1984) and Prima Paint Corp. v. Flood & Conklin Manufacturing Corp., 388 U.S. 395 (1967). In recent years, the Federal Arbitration Act has been interpreted to include pre-dispute arbitration clauses in consumer contracts. See, Green Tree Financial Corp. v. Randolph, 531 U.S. 333 (2000).

### III.  Procedural Posture

Pursuant to the terms of the 2018 Agreement, Plaintiffs filed this case initially in arbitration with the American Arbitration Association. (AAA)  See Plaintiffs' Exhibit A consisting of a cover letter of November 30, 2020 to the AAA along with an arbitration Complaint. In response to the Complaint which the Plaintiffs' filed in the AAA, the Plaintiffs received a letter from the AAA declining to accept this matter in arbitration. See Plaintiffs' Exhibit B. Paragraph 2 of that letter states, "Prior to the filing of this arbitration, the business [Wyndham] failed to comply with the AAA's policies regarding consumer claims. Accordingly, we must decline to administer this claim and any other claims between Wyndham Vacation Ownership and its consumers at this time."

The AAA did not set forth the specific reasons why it declined to arbitrate any matter with Wyndham. A review of the Wyndham contract, and other consumer rejections submitted to the court by Wyndham, reveals at least two provisions which are at odds with the AAA's rules:  1) Paragraph 6e requires the arbitration to be held in Orange County, Florida, contrary to the AAA forum rules. The paragraph further states that if there is a conflict with the AAA rules, the AAA must apply Wyndham's rules;  2)  Paragraph 10 of the Wyndham contract limits the damages recoverable by the Plaintiff and denies recovery for "consequential, indirect, incidental, special, exemplary, punitive, or enhanced damages…" Wyndham admitted in its briefs and at oral argument that these provisions are directly at odds with the AAA's rules and are in fact the underlying basis for the AAA's decision to decline this and all other Wyndham arbitrations.

Exhibit B

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441

## IV.    Waiver.

The failure of a business to meet the AAA guidelines has been anticipated by AAA.  By failing to comply with AAA rules, the business waives its forced arbitration mandate.  AAA Consumer Arbitration Rule R-1(d) states as follows:

> Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

The AAA has anticipated the issue at hand and specifically allows the Plaintiff to seek redress in the appropriate court.  The Plaintiffs have chosen to file this action in Horry County State Court in South Carolina.

A similar issue was decided by the Ninth Circuit Court of Appeals in the case of Brown v. Dillard's, Inc., 430 F.3d 1004 (9th Cir. 2005).  In that case, the employee Brown attempted to file an arbitration action with the AAA pursuant to her employment agreement with Dillard's.  Dillard's failed to comply with the AAA requirements and failed to pay its arbitration fees.  The AAA dismissed the case for Dillard's failure to participate and failure to abide by the AAA's Rules and Procedures.  Brown then filed an action in State Court in California.  Dillard's removed that case to Federal Court and then made a motion in Federal Court to dismiss the case based on the arbitration clause.

The Eleventh Circuit Court of Appeals affirmed the District Court's decision to deny the Motion to Dismiss.  The Eleventh Circuit held as follows:

> We hold that when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration.  That is, we hold that Dillard's cannot compel Brown to honor an arbitration agreement of which it is itself in material breach. [430 F.3d at 1006.]

The Eleventh Circuit held that Dillard's failure to arbitrate and abide by the AAA's Rules and Procedures was a breach of contract.  Based upon this breach of the contract to arbitrate, the

Exhibit B

Court would not compel the employee to abide by that contract to arbitrate. The Court also determined that the same result would be reached under the doctrine of waiver. The Court found that Dillard's had knowledge of the arbitration clause, that Dillard's had acted inconsistently with that right of arbitration and that Dillard's actions prejudiced the employee. In finding that Dillard's waived its right to arbitrate, the Court stated, "We have no trouble concluding that the delay and costs incurred by Brown are prejudicial for the purpose of waiver analysis." Id. at 1013.

In the present case, Wyndham has breached its own contract by refusing to comply with the AAA's rules concerning forum selection and consumer remedies. In its Reply Brief, Wyndham states as follows:

> On numerous occasions, AAA has rejected an arbitration filed by a Claimant against Wyndham, noting that the case will only proceed in AAA if Wyndham "provides a Court Order, ordering arbitration via the AAA." … Wyndham has attempted to become in good standing with the AAA by registering the Arbitration Clause at issue with AAA's Consumer Clause's Registry. However, in doing so, AAA has taken contradictory positions on Wyndham's arbitration provision. For example, in response to Wyndham's request to register its arbitration provision, AAA asked Wyndham to waive its location requirement and limitation on damages in the arbitration provision. … Wyndham has consistently taken the position with AAA that its arbitration provision is consistent with both the spirit and the letter of the AAA rules and protocol.

Wyndham's apparent disagreement with AAA is of no consequence to Plaintiffs. Plaintiffs did everything required of them pursuant to the 2018 Agreement by attempting to arbitrate the claim. Wyndam cannot mandate arbitration pursuant to the AAA, refuse to comply with AAA's requirements, and then compel Plaintiffs to arbitrate pursuant to the rules it has cherry picked. Wyndham's motion to dismiss and compel arbitration is therefore denied.

### V.    Unconscionable.

Wyndham's waiver of arbitration is further supported by the unconscionability of the contract. The provisions of the contract between Wyndham and the Plaintiffs are unconscionable

Exhibit B

in that the contract denies basic consumer remedies to the Plaintiffs. As stated above, Paragraph 10 of the contract attempts to prohibit the Plaintiff from recovering "consequential, indirect, incidental, special, exemplary, punitive, or enhanced damages…" This provision is in direct contravention to the case of <u>Simpson v. MSA of Myrtle Beach, Inc.</u>, 644 S.E.2d 663 (SC 2007), which holds that it is unconscionable to attempt to limit consumer damages. The fact that this paragraph is a separate paragraph from the arbitration clause is of no consequence. The clear implication of the paragraph is that the arbitrator is not allowed to award these damages to the consumer, which violates not only the AAA's rules, but also the <u>Simpson</u> case.

Although the limitation of damages and remedies is in a separate paragraph from the arbitration clause, it cannot be separated from the arbitration itself in such a way as to save the arbitration clause. Subparagraph (e) of the arbitration paragraph states, "In the event of any conflict between the AAA rules and this agreement, the provisions of this agreement shall be controlling." "This agreement" would include Paragraph 10 concerning the limitation of damages and remedies. Therefore, Paragraph 10 cannot be separated out from the arbitration clause and the arbitration clause cannot be saved.

## VI.   Unavailable Arbitration Forum.

Wyndham argues in its Reply Brief that in the event an arbitration forum becomes "unavailable" that the Court has the power to appoint another arbitrator. Wyndham cites Section 5 of the Federal Arbitration Act for the proposition that the AAA is "unavailable" and therefore the Court has the power to appoint an alternative arbitrator or arbitration forum. Wyndham cites the case of <u>Kahn v. Dell, Inc.</u>, 669 F.3d. 350 (3rd Cir. 2012). In that case, the arbitration agreement provided for arbitration by the National Arbitration Forum (NAF). In 2009, the National Arbitration Forum settled a dispute with various Attorney Generals that it would no longer attempt to handle

6

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441

any consumer arbitrations. The National Arbitration Forum literally became "unavailable" because it was forced to withdraw from consumer arbitrations. In that particular instance, which is not similar to the present case, the Third Circuit found that the NAF was "unavailable" and found that Section 5 of the FAA allowed for an alternate arbitrator to be assigned

Other Circuits have rejected the finding in <u>Kahn</u>. <u>See, for example, Moss v. First Premier Bank</u>, 835 F.3d 260 (2d Cir. 2016), holding that the fact that the arbitration clause between the parties provided that arbitration "shall" be conducted before the NAF indicated the parties' intent to arbitrate exclusively before the NAF. Because of this exclusivity, the Court would not appoint a substitute arbitrator. The <u>Moss</u> court stated, "The arbitration agreement in this case contains numerous indicators that the parties contemplated one thing: arbitration before NAF." Likewise, the Wyndham Arbitration Agreement provides that arbitration "shall" be conducted before the AAA. There are numerous indicators that the AAA is the exclusive arbitration forum. See also, <u>Ranzy v. Tijerina</u>, _____ F.3d. _____ (5th Cir. 2010), where the Court also held that it would not provide a substitute arbitrator for the NAF where the "Arbitration Agreement plainly states that [Plaintiff] 'shall' submit all claims to the NAF for arbitration and that the procedural rules of the NAF 'shall' govern the arbitration. Put differently, the parties explicitly agreed that the NAF shall be the exclusive forum for arbitrating disputes."

Not only is the AAA the exclusive forum for arbitrating disputes in the Wyndham contract, the AAA is not in fact "unavailable" to the parties. Unlike the NAF, the AAA still arbitrates consumer disputes and would in fact be available to arbitrate this particular consumer dispute if Wyndham would bring its arbitration clause in line with AAA policy.

## VII.   Statute of Limitations.

7

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441

The Plaintiffs' claims are premised upon the South Carolina Timeshare Act which is entitled "Vacation Timesharing Plans" codified at S.C. Code Ann. §27-32-10 et. seq. Plaintiffs' Amended Complaint alleges numerous instances where they claim Defendant violated the provisions of the act.

The Statute of Limitations begins when the Plaintiffs knew, or should have known, of the existence of a claim. When the Plaintiffs knew of their claims is a question of fact is a question of fact for the jury to determine. Therefore, the Defendants' Motion to Dismiss is denied.

### VIII.   Unfair Trade Practices.

The Defendants argue that the Plaintiffs' claim for violation of the Unfair Trade Practices Act is exempted from the Act, citing S.C. Code §39-5-40 (A), which provides that the UTPA does not apply to "actions or transactions permitted under laws administered by any regulatory body or officer." Defendants' citation of this exemption is inapplicable because it applies only to actions or transactions that are specifically permitted. The factual allegations set forth by the Plaintiffs in their Amended Complaint allege actions that are prohibited. These actions are specifically prohibited by the Timeshare Act and are nowhere permitted. Therefore, there is no exemption for these prohibited Acts.

The Defendants' arguments concerning regulation could just as well be made for the automotive sales industry because automobile dealers are also tightly regulated by the South Carolina Department of Consumer Affairs and the Department of Motor Vehicles. Yet, there are numerous cases affirming UTPA claims against car dealers. See, e.g., Singleton v. Stokes Motors, Inc., 358 S.C. 369, 595 S.E.2d 461 (2004) and Wright v. Craft Auto Mart, Inc., 372 S.C. 1, 640 S.E.2d 486 (Ct. App. 2006). There is no basis for the Defendants' argument that the

8

Exhibit B

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441

Defendant is somehow exempt from the Unfair Trade Practices Act for violating specific prohibitions of the Timeshare Act. The act provides for a specific remedy for the consumer if the timeshare company violates those prohibited practices and the South Carolina Unfair Trade Practices Act provides that it is cumulative to any other remedies provided by law. S.C. Code §39-5-160.

The Defendants then argue that the acts and omissions of Wyndham as alleged by the Plaintiffs do not affect the public at large and do not have the potential for repetition. The Plaintiffs allege that the Defendants have sold numerous timeshare interests within the State of South Carolina. The Plaintiffs allege that Defendants prepare preprinted forms and documentation for purchasers to sign and that these forms are similar or identical to those documents signed by the Reynolds. Therefore, if true, Defendants' acts have the potential for repetition.

When the Timeshare Act was amended in 2006, the legislature was careful to set forth the purposes of the Act and the amendments. Section 27-32-405 states, in part, as follows:

> The General Assembly declares that the purposes of this article are to recognize that:
>
> ...
>
> (D)  Timeshare estates located in South Carolina are sold primarily to non-residents;
>
> (E)  The purchaser of an interest in a vacation timesharing plan in this state is afforded significant and unique consumer protections not available to purchasers of other forms of real property;
> ...
> (G)  As part of each sale of an interest in a vacation timesharing plan, every purchaser must be given a comprehensive disclosure document that includes the material terms and conditions of the vacation timesharing plan; and
> ...

9

Exhibit B

(M)   The economic health and continued stability of the vacation
      timesharing industry should be subject to the clear identification
      of various procedures involved in the purchase and sale of an
      interest in a vacation timesharing plan and the timeshare closing
      itself.

The South Carolina Legislature has made it abundantly clear that timeshares affect the

public interest.

## **CONCLUSION**

For the reasons stated above, this court denies the Defendants' Motion to Dismiss.

_____
Kristi F. Curtis, Presiding Judge of the
Fifteenth Judicial Circuit

April ___, 2021

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441

10

Exhibit B

ELECTRONICALLY FILED - 2021 Apr 05 3:27 PM - HORRY - COMMON PLEAS - CASE#2020CP2607441



Horry Common Pleas

**Case Caption:**   James M Reynolds , plaintiff, et al VS   Wyndham Vacation Resorts
Inc , defendant, et al
**Case Number:**   2020CP2607441

**Type:**   Order/Other

So Ordered

s/ Kristi F. Curtis, Circuit Court Judge, No. 2762

Electronically signed on 2021-04-05 11:38:47     page 11 of 11

Exhibit B