UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CHARLES HAROLD BEDGOOD, JOEL WILSON BRANDON, HANNAH LYN HEIL-BRANDON, EDDIE MATHEWS JR., REENA T. SMITH, JUSTIN FLOYD DIAZ, CANDICE CLARK and ROSLIND CHRISTINE HARPER,**

   **Plaintiffs,**

v.             Case No: 6:21-cv-418-PGB-DCI

**WYNDHAM VACATION RESORTS, INC., WORLDMARK, THE CLUB and WYNDHAM RESORT DEVELOPMENT CORPORATION,**

   **Defendants.**
_____/

## ORDER

This cause comes before the Court on the following filings:

1. Defendants Wyndham Vacation Resorts, Inc., Worldmark, The Club, and Wyndham Resorts Development Corporation's Motion to Compel Arbitration (Doc. 11 (the "**Motion to Compel**")), Plaintiffs Charles Harold Bedgood, Joel Wilson Brandon, Hannah Lyn Heil-Brandon, Eddie Mathews Jr., Reena T. Smith, Justin Floyd Diaz, Candice Clark, and Roslind Christine Harper's response in opposition (Doc. 13), Defendants' reply (Doc. 19), and Plaintiffs' surreply thereto (Doc. 23);

2.  Magistrate Judge Daniel Irick's Report and Recommendation as to these filings (Doc. 48 (the "**Report**")), Plaintiffs' Objections thereto (Doc. 49), Defendants' response in opposition (Doc. 50), Plaintiffs' reply thereto (Doc. 53), and Plaintiffs' Notice of Supplemental Authority (Doc. 54);

3.  Plaintiffs' Motion for Leave to File Other Document (Doc. 55 (the "**Motion for Leave to File**")); and

4.  Defendants' Motion to Strike Plaintiffs' Motion for Leave to File (Doc. 56 (the "**Motion to Strike**")).

Upon consideration, the Court finds that Defendants' Motion to Compel is due to be denied, Plaintiffs' Motion for Leave to File is due to be denied, and Defendants' Motion to Strike is due to be denied.

## I.   BACKGROUND

This case arises from Plaintiffs' diligent search for a proper forum to litigate their claims against Defendants. Defendants operate a timeshare ownership program, which sells points to consumers that are, in turn, used to book accommodations at affiliated resorts worldwide. (Doc. 1, ¶¶ 30, 32–33). Using allegedly coercive tactics, Defendants induced Plaintiffs to purchase timeshare points based on representations that "purchasers will have a dizzying array of choices and will be able to stay at their desired property wherever it might be." (*Id.* ¶¶ 32–43). However, when Plaintiffs went to use their timeshare points to book the accommodations, Plaintiffs discovered that there was little to no availability at

their desired affiliated resorts, leaving Plaintiffs with no way to utilize their purchased timeshare points. (*Id.* ¶¶ 45–49). Plaintiffs then attempted to cancel their agreements with Defendants and seek a refund of the value of the unused timeshare points but were refused. (*Id.*).

When timeshare points are purchased, Plaintiffs sign a contract with Defendants containing a mandatory arbitration clause (the "**Agreement**"), which provides as follows:

> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT CERTAIN DISPUTES MUST BE RESOLVED BY BINDING ARBITRATION. IN ARBITRATION YOU GIVE UP THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES, AND ARE SUBJECT TO VERY LIMITED REVIEW**.
>
> **34. Dispute Resolution/Arbitration.** Any Disputes between the Parties shall be resolved as follows:
>
> **(a) Definition of Disputes.** The Parties agree that any dispute, claim, suit, demand or controversy arising out of or relating to this Agreement (any "***Dispute***") shall be determined exclusively and finally by individual arbitration, except as specified below. "Dispute" includes, without limitation, any claim regarding any breach, termination, enforcement, interpretation or validity of this Agreement, any claim arising out of or related to the marketing, purchase, and/or use of Owner's Ownership, Owner's use of Seller's properties, and/or Owner's participation in any activities/events sponsored, organized, or made available by Seller or any of its affiliates.
>
> **(b) Neutral Arbitrator/No Jury.** Any Dispute will be submitted to a neutral arbitrator, for a final and binding

determination, known as an award. The arbitrator is an independent decision maker, appointed by the American Arbitration Association ("**AAA**"), who reviews and weighs evidence provided by both Parties, and issues an award enforceable in court. Decisions by an arbitrator are subject to very limited review by a court. Except as expressly provided below in this Dispute Resolution/Arbitration clause, the Parties waive and relinquish any and all rights to have a court or a jury resolve any Dispute. The Parties expressly waive any right to a jury trial.

\* \* \* \*

**(e) Applicable Rules/Location.** This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.). The arbitration shall be administered by the AAA under its Consumer Arbitration Rules . . . . The arbitration shall be held in the County of Orange, State of Florida unless the Parties agree to another location in writing, or the arbitrator decides to hold a telephonic hearing to reach a decision based solely on the Parties' submission of documents, or to designate another location reasonably convenient for the Parties. In the event of any conflict between the AAA Rules and this Agreement, the provisions of this Agreement shall be controlling.

\* \* \* \*

**(h) Payment of Fees.** The payment of all fees for registration, filing and administration of the arbitration, and the payment of arbitrator fees, shall be governed by the AAA Rules and applicable law, unless otherwise stated in the Agreement. The Parties shall bear their own legal fees and legal expenses for any arbitration proceeding.

**(i) Notice and Good Faith Negotiation.** Any party intending to file an arbitration demand against the other Party must notify the other Party at least thirty (30) days before filing. The Parties agree to attempt to negotiate a mutually agreeable resolution to resolve any such dispute or claim during this period. If a Party filing an arbitration demand fails to provide that notice, the other Party is entitled to seek a stay of the arbitration proceeding from the AAA for thirty (30) days and to participate in settlement negotiations during that period in good faith.

(Doc. 1-2, pp. 30–31).

Plaintiffs Charles Bedgood ("**CB**"), Joel Brandon ("**JB**"), and Hannah Heil-Brandon ("**HB**") initially filed complaints with the American Arbitration Association ("**AAA**") pursuant to the Agreement. (Doc. 1, ¶¶ 15–17). However, upon filing the complaints with the AAA, the AAA informed Plaintiffs that the organization declined to hear arbitrations involving Defendants, stating,

> Prior to the filing of this arbitration, [Defendants] failed to comply with AAA's policies regarding consumer claims. Accordingly, we must decline to administer this claim and any other claims between [Defendants] and its consumers at this time. . . . According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

(Doc. 1-2, p. 2).

Plaintiffs CB, JB, and HB, along with other Plaintiffs Eddie Mathews Jr., Reena T. Smith, Justin Floyd Diaz, Candice Clark, and Roslind Christine Harper, then filed this action.[1] Even though Plaintiffs CB, JB, and HB initially tried to arbitrate these claims and were rebuffed, Defendants moved the Court to compel all Plaintiffs to arbitrate those same exact claims. (Doc. 11). In the Motion to Compel, Defendants argued that: (1) the AAA was unavailable because it would not arbitrate the Agreement; (2) however, the AAA was not integral to the Agreement; (3) thus, the Court must compel arbitration before a substitute arbitrator. (*Id.* at pp. 7–16). In response, Plaintiffs argued that the AAA is available, but Defendants

---

[1] Only Plaintiffs CB, JB, and HB filed arbitration claims with the AAA. (Doc. 1, ¶¶ 15–17). Plaintiffs Eddie Mathews Jr., Reena T. Smith, Justin Floyd Diaz, Candice Clark, and Roslind Christine Harper argue that it is futile for them to file an arbitration demand with the AAA as the denial letter states that it would not decline to administer "any other claims between [Defendants] and its consumers at this time." (Doc. 1-2, p. 2).

5

are precluded from compelling arbitration based on the FAA, waiver, and breach of contract. (Doc. 13, pp. 3, 9–18). Defendants then replied that Plaintiffs had not carried their burden in showing waiver or breach of contract and the AAA is available to arbitrate following a court order. (Doc. 19).[2] Plaintiffs then filed a surreply, but merely reiterated their original arguments. (Doc. 23).

After reviewing the initial briefing, the Report concluded that most of Defendants' argument regarding the substitute arbitrator was inapposite because both parties conceded the AAA was an available forum, but Plaintiffs had failed to carry their burden to show that Defendants had either waived their right to arbitration or breached their contract in a way that would foreclose the arbitration of the claims. (Doc. 48). Accordingly, the Report recommended that the Court should grant the Motion to Compel, compel arbitration before the AAA, and stay this case. (*Id.*).

While Plaintiffs' original response to Defendants' Motion to Compel was not the picture of clarity, Plaintiffs' timely Objection clearly articulates that Defendants cannot compel arbitration based on § 3 of the FAA,[3] and argues that they had

---

[2] The Court notes that it is unclear whether Defendants are requesting the Court to enforce the arbitration agreement and appoint a substitute arbitrator given the unavailable arbitration forum or are requesting the Court compel arbitration before the AAA even though the Agreement violates AAA's Consumer Due Process Rules. (*Compare* Doc. 11, p. 3 ("The Federal Arbitration Act ("FAA") governs Plaintiffs' contracts and states that a court "**shall**" appoint a substitute arbitrator if the chosen arbitral forum is unavailable for "***any***" reason. 9 U.S.C. § 5 (emphasis added). Thus . . . the arbitration provision remains valid and a court must appoint a substitute arbitrator."), *with* Doc. 19, p. 5 ("Although Defendants moved the Court for appointment of a substitute arbitrator, an order compelling arbitration would permit the parties to arbitrate before the AAA as well.")).

[3] A district court may, in its discretion, consider an argument that was not originally presented to the magistrate judge. *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006) ("The district

6

shown Defendants had waived or breached the Agreement.[4] (Doc. 49). Defendants, in response, argue that arbitration can be compelled before the AAA, § 4 of the FAA compels arbitration in this case, and Plaintiffs failed to show Defendants waived or materially breached the Agreement. (Doc. 50). Plaintiff also filed a reply describing the realities of compelling arbitration in this case without further discovery. (Doc. 53, pp. 6–7).

Subsequently, Plaintiffs filed a notice of supplemental authority in support of their Objection. (Doc. 54). And now, most recently, Plaintiffs have requested leave to file two additional letters from the AAA received by other third-party consumers stating that AAA still refuses to hear any arbitrations involving Defendants. (Doc. 55). Defendants then moved to strike this request. (Doc. 56). The matters are now ripe for review.[5]

## II.   STANDARD OF REVIEW

When a party objects to a magistrate judge's "recommended disposition" and "proposed findings of fact," the district court must "determine *de novo* any

---

court acted within its broad discretion when it considered and accepted an argument that had not been presented to the magistrate judge.").

[4]  Additionally, it is disputed whether Plaintiffs should have been allowed to pursue limited discovery for the purpose of proving waiver and material breach of the Agreement given the Report deemed this to be a crucial fact. (Doc. 49, pp. 8–10; Doc. 50, pp. 8–10; Doc. 53, pp. 2–6). However, the Court does not need to reach this issue as it does not affect the Court's analysis of the Motion to Compel.

[5]  The Court does not require a formal response for either the Motion for Leave to File or the Motion to Strike. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (stating that the court has the inherent power "to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants").

part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1)(C). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. § 636(b)(1)(C). The district court must consider the record and factual issues independent of the magistrate judge's report, as *de novo* review is essential to the constitutionality of § 636. *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512–13 (11th Cir. 1990).

## III. DISCUSSION

When considering a motion to compel, a district court must engage in a two-step inquiry. First, it must determine whether the parties agreed to arbitrate the claims at issue. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–628 (1985). Second, it must evaluate "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id*. The Report correctly concludes that both parties agree that the claims at issue here fall under the Agreement. (Doc. 48, p. 7). Therefore, the only question is whether there are legal constraints external to the Agreement that would foreclose the arbitration of these claims. Based on Defendants' failure to abide by AAA rules, Plaintiffs posit that there are three legal constraints that would foreclose the Court from compelling arbitration: the text of the Federal Arbitration Act ("**FAA**"), waiver, and breach of contract. (Doc. 13). The Report recommends that the Court should compel arbitration as Plaintiffs failed to meet their burden of proof as to waiver and breach of contract. (Doc. 48, pp. 9–16). However, the Court need not

8

reach these issues as the FAA alone forecloses the Court from compelling arbitration in this case.

Designed "to ensure private arbitration agreements are enforced according to their terms," the FAA is structured into two parts. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). First, Sections 1 and 2 define what agreements can properly be arbitrated, what agreements cannot be arbitrated, and the relevant exceptions. 9 U.S.C. §§ 1–2; *see AT&T Mobility LLC*, 563 U.S. at 339 (stating Section 2 reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract" (internal citations and quotations omitted)). Second, Sections 3, 4, and 5 create mechanisms for the courts to be able to enforce arbitration agreements by, respectively, staying litigation, compelling arbitration, and/or designating a substitute arbitrator. 9 U.S.C. §§ 3–5. However, "the district court can grant the requested relief only if it has the authority to act under the FAA." *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 15 (1st Cir. 2017), *aff'd* 139 S. Ct. 532 (2019); *see also Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474–75 (1989) ("[T]he FAA does not confer a right to compel arbitration of any dispute at any time.").

Section 3 states that a court in any suit with an arbitrable issue "shall on application of the parties stay the trial of action until such arbitration *has been had* in accordance with the terms of the agreement, providing the applicant for the stay is *not in default* in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added). After the initial grant of authority allowing a court to stay litigation

9

pending arbitration, Congress included a modifying clause stating that "providing the applicant for the stay is not in default in proceeding with such arbitration." *Id*.

By using the word "providing"[6] in the modifying clause, Congress created a condition that a party cannot properly request the court to stay litigation if said party is in default with the arbitration proceedings. Further, it is logical that a party in default with arbitration—whether from failing to follow the rules of the designated forum or failing to pay the appropriate filing fees—cannot turn around and ask the Court to stay the pending litigation that arose from its own indolence. Therefore, before a court can even evaluate whether the arbitration "has been had" to warrant a stay, the plain language of the statute provides that the request is improper if the requesting party is in default with the arbitration proceedings.

Default is defined as when a party is deemed to be *neglectful* in the arbitration proceedings. *Default*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("to be neglectful; esp., to fail to perform a contractual obligation"). It is logical that a party is in default when it has failed to comply with the arbitrator's policies. *Cf. Figuerdo-Chavez v. RCI Hosp. Holdings*, No. 1:21-cv-21733, 2021 WL 5479788, at *4 (S.D. Fla. Nov. 22, 2021) (citing to *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 934 (11th Cir. 2019)).[7] In the instant case, Plaintiffs included letters

---

[6] *Providing*, MERRIAM-WEBSTER DICTIONARY (2022) ("Definition of providing: on condition that").

[7] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

from the AAA refusing to arbitrate these claims *and* all future arbitrations between Defendants and its consumers as "[Defendants] failed to comply with AAA's policies," thereby demonstrating that Defendants are in default with their contractually chosen forum. (Doc. 1-2, p. 2). Accordingly, based on the text of § 3, Defendants cannot apply for a stay in the current action as they are in default with the arbitration proceedings.[8]

Independent of the Court's analysis under Section 3, Defendants argue that the Court must compel arbitration under § 4 of the FAA. (Doc. 50, p. 8). Section 4 states "[a] party aggrieved by *the alleged failure, neglect, or refusal of another* to arbitrate under a written agreement" may petition the Court for an order compelling arbitration. 9 U.S.C. § 4 (emphasis added); *see John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) (holding a district court must compel arbitration and stay the underlying action when "[a] party [is] aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement."). The text clearly articulates the party being compelled into arbitration either "fail[ed], neglect[ed], or refus[ed]" to arbitrate their initial claims. However, in this case, Plaintiffs originally tried to seek relief through arbitration and the AAA refused to arbitrate their claims and all future claims with

---

[8] Additionally, Plaintiffs CB, JB, and HB initially filed this action with the AAA and were each turned down due to Defendants' failure to follow AAA's rules. In the letters declining to arbitrate these claims, the AAA specifically stated that the consumers were free to file the claim with a court. (Doc. 1-2, p. 2). Thus, for these three Plaintiffs, the arbitration clearly "has been had" to the extent that it could be. *Heisman v. Wyndham Vacation Resorts, Inc.*, Civ. No. 20-11480, 2021 WL 1138125, at *3 (D.N.J. Mar. 22, 2021).

11

Defendants due to Defendants' failure to comply with its rules.[9] (Doc. 1-2, p. 2). Thus, Defendants cannot now argue that they are aggrieved by Plaintiffs' failure to arbitrate this case as they initially tried to arbitrate. Further, Defendants are now requesting the Court to compel an arbitration that would, in effect, bully the AAA to arbitrate an agreement that violates its own Consumer Due Process Rules—making the allegation that Defendant is somehow aggrieved by AAA's refusal to arbitrate Plaintiffs' initial attempts seem even more suspect.

Nevertheless, relying on *Kaspers v. Comcast Corporation*, Defendants argue that "even actions that make it extraordinarily difficult to resolve or arbitrate their disputes . . . do not negate an agreement to arbitrate." (Doc. 19, pp. 2–3 (quoting 631 F. App'x 779, 783 (11th Cir. 2015)). However, the policy behind the FAA clarifies the holding from *Kaspers*. In *Kaspers*, the parties' arbitration agreement specifically held that if the contractually selected arbitrator would not enforce the agreement, then "the parties shall agree on a substitute arbitration organization." No. 1:12-cv-01397, 2013 WL 12177928, at *3 (N.D. Ga. Feb. 26, 2013). Thus, the district court held that the plaintiff had "*failed* to fully seek arbitration under the terms of the Arbitration Provision" and properly compelled arbitration under § 4 of the FAA. *Id.* at *4. While the Eleventh Circuit affirmed the

---

[9] Plaintiffs Eddie Mathews Jr., Reena T. Smith, Justin Floyd Diaz, Candice Clark, and Roslind Christine Harper argue that it is futile for them to file an arbitration demand with the AAA as the denial letter states that it would not decline to administer "any other claims between [Defendants] and its consumers at this time." (Doc. 1-2, p. 2). The Court values substance over formality and does not find it necessary for these select Plaintiffs to go through the same procedures of applying to arbitrate their claims and then being sent back to this Court.

12

district court holding on the grounds that the arbitration clause was not unconscionable, the opinion also emphasized that the district court was proper in enforcing the arbitration agreement in accordance with its terms. *Kaspers*, 631 F. App'x at 782–84.

Without any mention of a substitute arbitrator, the instant Agreement states, "[t]he arbitrator is an independent decision maker, appointed by the [AAA]" and then exclusively refers to AAA throughout the relevant provisions. (Doc. 1-2, pp. 30–31). As the Supreme Court has repeatedly emphasized, arbitration is a matter of contract and should be enforced with equal force as other contracts. *See AT&T Mobility LLC*, 563 U.S. at 339; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Volt Info. Scis., Inc.*, 489 U.S. at 478. Consequently, just as the district court in *Kaspers* held that the compulsion of arbitration was proper as the plaintiff had *failed to follow* the written agreement, the Court here cannot compel arbitration as Plaintiffs *have followed* the Agreement in initially seeking arbitration.[10]

Finally, Defendants do not appear of one mind whether the AAA is an available forum. Defendants originally argue in the Motion to Compel that the Court should appoint a substitute arbitrator as the AAA is unavailable based on Plaintiffs' allegation that the AAA declined to administer the arbitrations for CB, JB, and HB. (Doc. 11, pp. 7–16). However, confusingly, in their later reply, Defendants then switch positions, saying that the Court need not appoint a

---

[10] *See supra* note 9.

13

substitute arbitrator as the AAA is available regardless of whether Plaintiffs had attempted to arbitrate, making it unclear as to what remedy Defendants are even requesting.[11] (Doc. 19, pp. 4–5).

Section 5 of the FAA enables the court to appoint a substitute arbitrator "where 'for any [] reason there shall be a lapse in the naming of an arbitrator.'" *Brown*, 211 F.3d at 1222 (quoting 9 U.S.C. § 5). "Where the chosen forum is unavailable . . . or has failed for some reason, § 5 applies and a substitute arbitrator may be named" so long as it is not integral to the arbitration agreement. *Id*. While "much ink was spilled over the issue of whether the AAA is available as a forum, and if not, whether the AAA as a forum is integral to the [Agreement]," the Report correctly finds this line of argument is irrelevant as the parties have both asserted the AAA remains an available forum. (Doc. 48, pp. 6–7, 7 n.3). Further, upon the Court's review, the AAA is an available forum if it were not for Defendants' negligent failure to follow the AAA's rules.[12] Accordingly, given the chosen forum

---

[11] *See supra* note 2.

[12] A forum is not unavailable for merely refusing to arbitrate an agreement. Instead, a forum is unavailable when it no longer exists or does not even handle private arbitrations. *See Brown*, 211 F.3d at 1222 (holding the specified forum was unavailable as it had dissolved but was not central to the agreement); *Inteianbor v. CashCall, Inc.*, 768 F.3d 1346, 1354 (11th Cir. 2014) (holding the chosen arbitration forum is unavailable when it "does not involve itself in arbitration between private parties at all").

Further, Defendants cite to *In re Checking Acct. Overdraft Litig*, arguing that the Eleventh Circuit has rejected the contention that AAA's refusal to arbitrate claims renders the arbitration provision invalid. 685 F.3d 1269, 1283 n.20 (11th Cir. 2012). First, the Court is not analyzing whether the instant Agreement is unconscionable and, therefore, unenforceable as in the Eleventh Circuit case. Instead, Defendants' default with the AAA has prevented the Court from compelling arbitration based on its analysis of the FAA. Thus, the AAA is an available forum, and the Agreement would be enforceable notwithstanding Defendants' own defaulting actions.

is *available* except for Defendant's previously discussed default, § 5 of the FAA does not apply, and the Court cannot name a substitute arbitrator.

Therefore, while the claims may have originally been arbitrable under the Agreement, Defendants' actions have foreclosed the arbitration of these claims under the plain language of the FAA. Accordingly, the Motion to Compel is due to be denied.[13] Further, the Court finds that there is no need to supplement the record as requested to resolve the Motion to Compel, and thus, both Plaintiffs' Motion for Leave to File and Defendants' Motion to Strike are denied as moot.

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED AND ADJUDGED** as follows:

1. The Report (Doc. 48) is **REJECTED**.
2. Plaintiffs' Objection thereto (Doc. 49, 53) is **SUSTAINED**.
3. The Motion to Compel Arbitration (Doc. 11) is **DENIED**.
4. Plaintiffs' Motion for Leave to File (Doc. 55) is **DENIED** as moot.
5. Defendants' Motion to Strike (Doc. 56) is **DENIED** as moot.
6. The stay on discovery is **LIFTED**.

**DONE AND ORDERED** in Orlando, Florida on March 30, 2022.

---

[13] Seemingly as an afterthought in a footnote on the last page of their Motion to Compel, Defendants suggest that if the Court were to decline to compel arbitration, Plaintiffs cannot proceed as a class given the class action waiver in the contracts. (Doc. 11, p. 15). However, this is an issue for a different time, and the Court need not address this issue in determining whether to compel arbitration.

15

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties