UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES HAROLD BEDGOOD,
JOEL WILSON BRANDON,
HANNAH LYN HEIL-BRANDON,
EDDIE MATHEWS JR., and REENA
T. SMITH,

      Plaintiffs,

v.                                  Case No: 6:21-cv-418-JSS-DCI

WYNDHAM VACATION RESORTS,
INC.,

      Defendant.

_____/

## ORDER

    Defendant moves for summary judgment.  (Dkt. 131; *see* Dkt. 135)  Plaintiffs oppose Defendant's motion.  (Dkt. 133.)  In preparation for the trial of this matter, each party also moves in limine to exclude certain evidence. (Dkts. 141, 143.) The motions in limine are opposed. (Dkts. 146, 147.)  For the reasons outlined below, Defendant's motion for summary judgment is granted in part and denied in part, and Plaintiffs' and Defendant's motions in limine are denied.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## BACKGROUND[1]

Plaintiffs purchased timeshare points from Defendant that could be used to reserve accommodations at Defendant's resorts. (Dkt. 132 at ¶¶ 3, 6, 8.) Specifically, Charles Bedgood purchased points in Tennessee, Joel Brandon and Hannah Heil-Brandon (the Brandons) purchased points in South Carolina, and Eddie Matthews and Reena T. Smith jointly purchased points in Louisiana. (*Id.*) In connection with their purchases, Plaintiffs signed and received a copy of a security agreement governing their purchases, as well as documents titled Exhibit to Ownership Review Buyer's Acknowledgment, Acknowledgement and Disclosure Statement, PTVO Owners Association, Inc., Closing Disclosure, and Wyndham Rewards Maintenance Fee Reference Guide for New Cardholders. (*Id.* ¶¶ 4, 7, 10.)

Plaintiffs allege that Defendant fraudulently induced them to purchase their timeshare points by failing to disclose that Plaintiffs would be unable to use their timeshare points to stay at their desired locations due to Defendant's lack of resort availability. (Dkt. 90 ¶ 21.) Plaintiffs further allege that Defendant materially breached their contracts because when they attempted to resolve their disputes with Defendant through arbitration administered by the American Arbitration Association (AAA), as required by the contracts, the AAA refused to adjudicate their claims due to Defendant's violation of the AAA's rules. (*Id.* ¶¶ 1–4, 16–20.)

---

[1] The court generally draws the facts from the portion of Defendant's Statement of Material Facts to which Plaintiffs have stipulated and agreed are undisputed. (Dkt. 132 at ¶¶ 1–10.)

Plaintiffs bring claims against Defendant for breach of contract (count one) and fraudulent inducement by omission (count two) under Florida law. (*Id.* ¶¶ 81–93.) Additionally, Bedgood brings a claim for violation of the Tennessee Time-Share Act of 1981 (TTA), Tenn. Code. Ann. §§ 66-32-131, 132 (count three), the Brandons bring a claim for violation of the South Carolina Time Sharing Plan Act (SCTPA), S.C. Code. Ann. § 27-32-110 (count four) and the South Carolina Unfair Trade Practices Act (SCUTPA), S.C. Code Ann. § 39-5-20 (count five), and Matthews and Smith bring a claim for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA), La. Stat. Ann. § 51:1405 (count six). (*Id.* ¶¶ 94–109.)

## APPLICABLE STANDARDS

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable factfinder "could return a verdict for" the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the moving party meets this burden, the non-moving party must show that a genuine dispute of material fact precludes summary judgment. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC, Ltd. V. Hard Rock Cafe Int'l (USA)*, 703 F. App'x, 814, 816–17 (11th Cir. 2017) ("Presenting arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))).

In determining whether a genuine dispute of material fact exists, the court must view the evidence, draw all factual inferences in the light most favorable to the non-moving party, and resolve any reasonable doubts in that party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party." *Matsushita*, 475 U.S. at 587. Because the court sits in diversity jurisdiction, Florida substantive law applies to Plaintiffs' breach of contract and fraudulent inducement by omission claims. *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023). Additionally, the parties apply Florida law to these claims. (Dkt. 131 at 14–16, 21–23; Dkt. 133 at 13.) *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("If

the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies.").

## ANALYSIS

In its motion for summary judgment, Defendant asserts that Plaintiffs' claims fail as a matter of law. (Dkt. 131 at 12–23.) The court discusses each claim in turn.

### A. Breach of Contract (Count One)

To prevail on a breach of contract claim, "a plaintiff must prove: (1) a valid contract existed[,] (2) a material breach of the contract[,] and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017). Plaintiffs' contracts contain the same provision requiring mandatory arbitration administered by the AAA. (Dkt. 132-3 at 46–47; Dkt. 132-5 at 145–46; Dkt. 132-6 at 8–9.) Bedgood and the Brandons filed demands for arbitration that the AAA rejected. (*See* Dkt. 57 at 5.) The court has already determined, and the Eleventh Circuit affirmed, that Defendant violated the AAA rules. (*Id.* at 10–12.) *Bedgood v. Wyndham Vacation Resorts*, 88 F.4th 1355, 1362–63 (11th Cir. 2023).

"Generally, whether an alleged breach is material under Florida law is a question of fact." *Peterbrooke Franchising of Am., LLC v. Mia. Chocolates, LLC*, No. 21-10242, 2022 WL 6635136, at *4 (11th Cir. Oct. 11, 2022). "To establish a material breach, the party alleged to have breached the contract must have failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties." *Burlington &*

*Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. Dist. Ct. App. 2015); *Covelli Fam., L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. Dist. Ct. App. 2008) ("The issue of whether an alleged breach is vital or material is reviewed as a question of fact."). Defendant asserts that the AAA's refusal to arbitrate Bedgood's and the Brandons' claims due to Defendant's noncompliance with the AAA rules is not a material breach of their timeshare contracts because they are pursuing their claims before this court. (Dkt. 131 at 22.) Bedgood and the Brandons contend that Defendant's failure to comply with the AAA rules is a material breach of their contracts because they agreed to resolve any disputes through arbitration in an efficient manner. (Dkt. 133 at 19–20.) Plaintiffs further maintain that rather than resolving their disputes in an efficient manner through arbitration, they have spent four years litigating this case in this court and the Eleventh Circuit. (*Id.*) Given the dispute concerning the materiality of Defendant's breach, issues of material fact remain for trial as to Bedgood and the Brandons breach of contract claims. *Peterbrooke Franchising of Am.*, 2022 WL 6635136, at *4; *Burlington & Rockenbach, P.A.*, 160 So. 3d at 960; *Covelli Fam.*, 977 So. 2d at 752.

Defendant separately asserts that Bedgood and the Brandons' claims fail because the arbitration provision is severable pursuant to their contracts' severability clauses. (Dkt. 131 at 22–23 (citing *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1024 (Fla. Dist. Ct. App. 2005).) The severability clause provides that "[i]f any portion of this Agreement is deemed invalid or unenforceable, the remainder of the Agreement shall remain in force." (Dkt. 132-3 at 47; Dkt. 132-5 at 146.) Defendant does not

explain how the severability of the arbitration provision precludes liability for its alleged breach of the provision. Defendant provides a single quote from a single case to support its severability argument. (Dkt. 131 at 23 (quoting *Fonte*, 903 So. 2d at 1024).) In *Fonte*, the court stated, "contractual provisions are severable, where the [unenforceable] portion of the contract does not go to [the] essence" of the contract. 903 So. 2d at 1024. Here, whether the arbitration provision in Bedgood's and the Brandons' contracts is essential or material is a disputed issue of fact. (*Compare* Dkt. 131 at 22, *with* Dkt. 133 at 19–20.) Further, *Fonte* does not support the proposition that severance of an allegedly breached contractual provision precludes liability. As such, the court is not persuaded by Defendant's argument, and Defendant is not entitled to summary judgment on Bedgood's and the Brandons' breach of contract claims.

Defendant maintains it did not breach Matthews and Smith's contract because they never filed a demand for arbitration with the AAA as the contracts required. (Dkt. 131 at 22.) Matthews and Smith respond that the Eleventh Circuit held it would have been futile for them to file demands for arbitration with the AAA. (Dkt. 133 at 20 (citing *Bedgood*, 88 F.4th at 1368).) For purposes of Defendant's motion to compel arbitration, this court and the Eleventh Circuit held it was futile for Matthews and Smith to file a demand for arbitration with the AAA. (Dkt. 57 at 12); 88 F.4th at 1368. However, in the context of their breach of contract claims, Matthews and Smith cannot establish that Defendant breached the arbitration provisions in their contract because they never filed demands to arbitrate with the AAA. Therefore, absent

evidence, argument, or binding legal authority from Matthews and Smith to the contrary, (*see* Dkt. 133 at 19–20), Defendant is entitled to summary judgment on Matthews and Smith's breach of contract claims. *Matsushita*, 475 U.S. at 587.

## B. Fraudulent Inducement by Omission (Count Two)

To prevail on a fraudulent inducement claim, a plaintiff must prove: "(1) [there was] a false statement of material fact[,] (2) the maker of the false statement knew or should have known of the falsity of the statement[,] (3) the maker intended that the false statement induce another's reliance[,] and (4) the other party justifiably relied on the false statement to its detriment." *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917 (Fla. Dist. Ct. App. 2012). Although these elements refer to a false statement, "Florida law recognizes that fraud can occur by omission." *ZC Ins. Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. Dist. Ct. App. 2003).

Defendant maintains that Plaintiffs failed to provide evidence that it fraudulently induced them to enter their timeshare contracts. (Dkt. 131 at 14–16.) In count two of Plaintiffs' amended complaint, Plaintiffs improperly reallege all factual allegations preceding the counts without specifying which omissions form the basis of each Plaintiffs' fraudulent inducement claims. (Dkt. 90 ¶¶ 87–93.) In response to Defendant's motion, Plaintiffs direct the court to the following alleged omissions, (1) Bedgood's sales representative told him there certainly should be availability through Defendant's properties in Orange Beach, Alabama; (2) the Brandons' sales representative told them Defendant's resorts were exclusive to timeshare point owners and they could refinance their timeshare loan; and (3) Matthews and Smith were not

given truthful information about which locations they could reserve, the timing for the resorts' availability, and the financial obligation required.  (Dkt. 133 at 14–15 (citing Dkt. 133-11 at 3, 10, 13–14); Dkt. 133-1 at 106:4–9, 119:8–9; Dkt. 133-4 at 172:25–173:1; Dkt. 133-7 at 56:13–16.)

As for Bedgood's and the Brandons' contentions, the affirmative representations about exclusivity, availability, and refinancing are not omissions. Plaintiffs only pleaded a claim for fraudulent inducement by omission.  (Dkt. 90 ¶¶ 87–93.)  Fraudulent inducement by affirmative misrepresentation is a different theory of liability from fraudulent inducement by omission.  *See Awodiya v. Ross Univ. Sch. Of Med.*, 857 F. App'x 533, 539 n.5 (11th Cir. 2020).  "A response to a summary judgment motion cannot create a new claim or theory of liability."  *O'Neal v. City of Hiram*, No. 23-11556, 2024 WL 1794282, at *1 (11th Cir. Apr. 25, 2024) (citing *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013)); *see also Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1194 (11th Cir. 2021) ("[P]laintiffs may not 'raise new claims at the summary judgment stage.'") (quoting *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015).  At the summary judgment stage, Plaintiffs must identify affirmative evidence to support the omission theory that they have pleaded.  *Crawford-El*, 523 U.S. at 600.  Bedgood and the Brandons have not done so. Defendant is therefore entitled to summary judgment on Bedgood's and the Brandons' fraudulent inducement by omission claims.

Regarding Matthews and Smith, each Plaintiff failed to allege any omission regarding their financial obligation in the amended complaint.  (*See* Dkt. 90 ¶ 61.)

Therefore, the court will not consider their financial obligation argument.  *Rafferty*, 13 F.4th at 1194; *O'Neal*, 2024 WL 1794282, at *1.  Regarding location and availability, Smith testified that after she and Matthews purchased their timeshare points, they successfully booked a family vacation at their desired location.  (Dkt. 132-16 at 70:17–71:7.)  Matthews and Smith do not contend that Smith's testimony is inaccurate.  Instead, they direct the court to Smith's testimony that Defendant failed to inform them that they have blackout dates and restrictions for the timeshares, and that half of the hotel was booked by non-timeshare guests, all of which made it hard for them to find availability after their initial trip.  (Dkt. 133-2 at 65:18–66:6.)  Defendant contends that even if Smith's testimony is accurate, Matthews and Smith became ineligible to use their points when they defaulted on their timeshare loan in May 2019.  (Dkt. 131 at 15; Dkt. 132-19.)

Matthews and Smith do not dispute that their security agreement contract informed them that if they defaulted on their timeshare payments, they would not be able to make reservations.  (Dkt. 132 ¶ 8; Dkt. 132-6 at 4.)  However, Matthews and Smith dispute the date they defaulted on their timeshare loan.  According to them, they did not default until December 2019.  (Dkt. 133 at 19; Dkt. 133-5 ¶ 16–17.)  Given Matthews' and Smith's testimony regarding Defendant's alleged omissions concerning resort availability and the parties' dispute concerning the date Matthews and Smith defaulted, Defendant is not entitled to summary judgment on Matthews' and Smith's fraudulent inducement by omission claims.  *See Morrison*, 323 F.3d at 924; *Grimes v. Lottes*, 241 So. 3d 892, 897–98 (Fla. Dist. Ct. App. 2018) (reversing grant of summary

judgment in favor of the defendants as to the plaintiffs' fraud claims when genuine issues of material fact existed); *Allington Towers N., Inc v. Teich*, 345 So. 2d 745, 746 (Fla. Dist. Ct. App. 1977) (reversing grant of summary judgment in favor of the defendant holding that whether the non-moving plaintiff purchaser was in default of condominium purchase contract was a genuine issue of material fact that precluded summary judgment).

### C. Tennessee Time-Share Act (Count Three)

Bedgood asserts that Defendant violated the TTA because Defendant's sales representative falsely told him he could use his points to reserve accommodations at a resort in Orange Beach, Alabama. (Dkt. 133 at 15.) The TTA states:

> It is unlawful for any person with intent directly or indirectly to offer for sale or sell time-share intervals in this state to authorize, use, direct[,] or aid in the publication, distribution[,] or circulation of any advertisement . . . concerning the time-share project in which the time-share intervals are offered, which contains any statement, pictorial representation[,] or sketch which is false or misleading.

Tenn. Code Ann. § 66-32-131. The TTA defines "advertisement" as "any written, printed, verbal[,] or visual offer by an individual or general solicitation." *Id*. § 66-32-102(2). If a person willfully violates the TTA, punitive damages may be awarded. *Id*. § 66-32-118(a). Section 132 of the TTA contains thirteen specific provisions that

- 11 -

prohibit various forms of false advertising in the sale of timeshares.[2]  *Id.* § 66-32-132.

In pertinent part, section 132 states:

> No advertising for the offer or sale of time-share intervals shall . . . [m]isrepresent the size, nature, extent, qualities, or characteristics of the accommodations or facilities which comprise the time-share project . . . [or] [m]ake any misleading or deceptive representation with respect to the contents of the time-share program, the purchase contract, the purchaser's rights, privileges, benefits[,] or obligations under the purchase contract or this part.

*Id.* § 66-32-132(8), (11).  Defendant maintains summary judgment is appropriate because Bedgood testified that his sales representative told him Defendant did not have resorts in Orange Beach, Alabama.  (Dkt. 132-2 at 26:23–27:25.)  Bedgood does not contend that his testimony is inaccurate.  (Dkt. 133 at 15–16.)  Instead, his counsel appears to speculate, without citing any record evidence, that Defendant's sales representative told him he could use his timeshare to find Orange Beach accommodations "presumably through exchange services like RCI."  (Dkt. 133 at 15.) *See* Fed. R. Civ. P. 56(c)(1) (requiring a party who asserts that a fact is genuinely disputed to "support the assertion by . . . citing to particular parts of materials in the record").  However, Bedgood testified that he did not "even know RCI was connected with [Defendant] at the time."  (Dkt. 132-2 at 13:12–17.)  Given Bedgood's testimony

---

[2] Bedgood generally cites section 132 of the TTA in the amended complaint without specifying which of the thirteen provisions apply to his claims. (Dkt. 90 ¶¶ 95–97.)  In the motion, Defendant asserts that Bedgood purports to bring claims under section 132, subsections 8 and 11. (Dkt. 131 at 17.) Bedgood directs the court's attention to subsections 1, 2, 3, 10, and 11 but does not explain how these subsections apply to his TTA claim. (Dkt. 133 at 15.)  Therefore, the court will focus its analysis on subsections 8 and 11.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

effectively conceding that he was informed Defendant lacked resort properties in

Orange Beach, Alabama, Defendant is entitled to summary judgment on Bedgood's

TTA claim. *Matsushita*, 475 U.S. at 587; *Crawford-El*, 523 U.S. at 600.

### D. South Carolina Time Sharing Plan Act (Count Four)

Like the TTA, the SCTPA contains specific provisions that prohibit various

forms of false advertising in the sale of timeshares.[3]  S.C. Code. Ann. § 27-32-110.

Section 110 of the SCTPA states in pertinent part:

> It is a violation of this chapter for a seller of vacation time
> sharing plans to . . . misrepresent the amount of time or
> period of time the accommodations and facilities are
> available to a purchaser[,] . . . misrepresent the size, nature,
> extent, qualities, or characteristics of the offered
> accommodations and facilities[,] . . . make misleading or
> deceptive representations with respect to the contents of the
> contract or the purchaser's rights, privileges, or benefits
> under it[,] . . . fail to honor and comply with all provisions
> of the contract with the purchaser[,] . . . [or] do any other
> act of fraud, misrepresentation, or failure to make a
> disclosure of a material fact.

*Id.* § 27-32-110(3), (5), (7), (8), (11).  The Brandons assert that triable issues of material

fact remain as to their SCTPA claim because they were allegedly falsely promised wide

availability, savings in the tens of thousands of dollars, and the ability to refinance

their timeshare loan.  (Dkt. 133 at 17 (citing Dkt. 133-8 at 4–9).)  In the amended

complaint, the Brandons only allege that Defendant's sales representative "omitted to

---

[3] Like Bedgood, the Brandons generally cite section 110 of the SCTPA in the amended complaint
without specifying which of the SCTPA's eleven specific provisions apply to their claims.  (Dkt. 90 ¶¶
99–103.)  In their response to the motion, the Brandons assert that Defendant violated section 110,
subsections 3, 5, 7, 8, and 11.  (Dkt. 133 at 17.)  Therefore, the court focuses its analysis on those
subsections.  *See Access Now,* 385 F.3d at 1330.

tell [them] that the destinations they desired would not be available and that they would not be able to use their timeshare to make reservations where they wanted." (Dkt. 90 ¶ 60.)    Therefore, the court considers only their availability argument. *Rafferty*, 13 F.4th at 1194.   Defendant maintains that summary judgment is appropriate because the Brandons testified they have used their timeshare points every year since they purchased them.   (*See* Dkt. 131 at 18–20; Dkt. 132 at 11 (citing Dkt. 132-15 at 149:15–150:10, 151:20–25, 156:6–13, 226:1–9, 16–21).)   The Brandons do not contend that their testimony is inaccurate.   Instead, they rely on their testimony that (1) they rarely ever got to stay at their first resort choice, (2) they were told by Defendant's sales representative that Defendant has ample rooms at its resorts so the Brandons did not have to worry about availability, and (3) Ms. Brandon's testimony that there was no availability at one of their desired locations when she tried to book at least a month before their desired travel date.   (Dkt. 133 at 17; Dkt. 133-1 at 11:19–12:2, 217:9–218:5.)

Viewing their contentions in the light most favorable to them, the Brandons incorrectly interpreted Defendant's representations about availability to mean they could book a specific resort whenever they wanted to travel.   The court has not been provided with evidence that Defendant or its representatives told the Brandons that they could book a specific resort during the exact time they wanted to travel.   As Defendant points out, the acknowledgment and disclosure statement that the Brandons signed, stipulated to, and agreed they received a copy of with their contract, explicitly stated that Defendant does not guarantee the Brandons "will be able to stay

- 14 -

at a particular participating . . . hotel or resort during any specific time or will be able to redeem [Defendant's reward] points for any particular activity or service."  (Dkt. 132 at 1, 3; Dkt. 132-5 at 151.)  Moreover, the Brandons' ability to use all their points each year supports Defendant's contention that it always had the availability to accommodate the Brandons, though not necessarily with their first, second, or third choice, and the Brandons have not provided evidence that Defendant guaranteed they could reserve their preferred choice.  As such, Defendant is entitled to summary judgment on the Brandons' SCTPA claim.  *Matsushita*, 475 U.S. at 587; *Crawford-El*, 523 U.S. at 600.

### E.  South Carolina Unfair Trade Practices Act (Count Five)

The SCUTPA states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." S.C. Code Ann. § 39-5-20(a).  To recover under the SCUTPA, the plaintiff must present evidence that "'(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce[,] (2) the unfair or deceptive act affected public interest[,] and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s).'"  *Gault v. Thacher*, 367 F. Supp. 3d 469, 485 (D.S.C. 2018) (quoting *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006)).  "An act is unfair when it is offensive to public policy or when it is immoral, unethical, or oppressive."  *Bessinger v. Bi-Lo, Inc.*, 622 S.E.2d 564, 567 (S.C. Ct. App. 2005).  "An act is deceptive when it has a tendency to deceive."  *Health Promotion Specialists, LLC v.*

*S.C. Bd. of Dentistry*, 743 S.E.2d 808, 816 (S.C. 2013) (internal quotation and citation omitted).  As for damages, the SCUTPA states that "[a]ny person who suffers any ascertainable loss of money . . . as a result of the use or employment by another person of an unfair or deceptive method, act[,] or practice declared unlawful by [Section] 39-5-20 may bring an action individually . . . to recover actual damages."  S.C. Code Ann. § 39-5-140(a).

Defendant asserts that summary judgment is appropriate because the Brandons have not provided evidence that Defendant engaged in an unfair or deceptive act regarding their timeshare purchase. (Dkt. 131 at 19.)  Defendant maintains it made numerous disclosures to the Brandons regarding availability, and the Brandons' claims are belied by the reality that they used all their timeshare points every year since they purchased them. (*Id.*; Dkt. 132 at 11 (citing Dkt. 132-15 at 149:15–150:10, 151:20–25, 156:6–13, 226:1–9, 16–21).)   In the amended complaint, the Brandons do not specify which unfair or deceptive acts or practices Defendant engaged in.  (Dkt. 90 ¶¶ 104–107.)  The Brandons make the same argument, that they were allegedly falsely promised wide availability, for their SCUTPA and SCTPA claims. (Dkt. 133 at 16–18.)  The court has already rejected this argument because the acknowledgement and disclosure statement does not guarantee specific availability at a certain time, the Brandons do not point the court to evidence that Defendant or its representative guaranteed specific availability, and the Brandons' ability to use their points every year supports the contention that Defendant could accommodate the Brandons.

Defendant further maintains that summary judgment is appropriate because the Brandons have not provided evidence that they suffered an ascertainable loss of money, considering their testimony that they have used their timeshare points to vacation each year. (*See* Dkt. 131 at 19–20; Dkt. 132 at 11 (citing Dkt. 132-15 at 149:15–150:10, 151:20–25, 156:6–13, 226:1–9, 16–21).)  The Brandons, without directing the court to any record evidence, first respond that their damages are "based on what they were promised versus what they received." (Dkt. 133 at 18.)  Even if the Brandons had established that Defendant engaged in an unfair or deceptive act, which they have not, what they were promised versus what they received is too broad for the factfinder to accurately determine the damages they seek.  *See Baughman v. AT&T Co.*, 410 S.E.2d 537, 546 (S.C. 1991) (explaining that to survive summary judgment a plaintiff must point the court to record evidence that will "enable the court or jury to determine the amount [of damages sought under the SCUTPA] . . .  with reasonable certainty or accuracy.").

The Brandons also contend, without citing any record evidence, that their damages can be ascertained by considering the $27,640 amount they paid for points that may be purchased for $1 on eBay. (Dkt. 133 at 17–18.)  However, the Brandons do not provide the court with evidence that allows the factfinder to determine with reasonable certainty or accuracy that the same number of points they purchased for $27,640 could be obtained for $1 on eBay.  *Baughman*, 410 S.E. 2d at 546. Additionally, when Defendant asked Mr. Brandon how much money he was seeking in damages, he testified, "I don't know exactly how much. I believe . . . [i]t was in the

area between [$]16[,000] and $18,000." (Dkt. 132-15 at 18:3–12.)  Mr. Brandon further

testified that he did not "have a specific number in [his] head for compensation."  (*Id.*

at 18:17–19:3)  Regarding her alleged damages, Ms. Brandon testified that they "would

like back what [they] have given to this endeavor.  So[,] whatever that would be" was

an appropriate estimate of their damages.  *Id.* at 20:20–24.  Absent record evidence to

establish that Defendant engaged in an unfair or deceptive act or a finding of actual

damages, Defendant is entitled to summary judgment on the Brandons' SCUTPA

claims.  *Baughman*, 410 S.E.2d at 546; *Woodson v. DLI Properties, LLC*, 753 S.E.2d 428,

435 (S.C. 2014) (affirming the lower court's grant of summary judgment on a claim

brought by the husband and wife plaintiffs under the SCUTPA after the court

concluded that the husband's testimony regarding damages was "purely speculative

and, therefore, not recoverable"); *Charleston Dev. Co., LLC v. Alami*, 860 S.E.2d 687,

694–95 (S.C. Ct. App. 2021) (affirming lower court grant of summary judgment on

SCUTPA claim in part because there was no testimony from the plaintiff presented to

the court about a "sum certain amount of money owed").

### F.  Louisiana Unfair Trade Practices Act (Count Six)

The LUTPA, like the SCUTPA, states that "[u]nfair methods of competition

and unfair or deceptive acts or practices in the conduct of any trade or commerce are

. . . unlawful."  La. Stat. Ann. § 51:1405(A).  The LUTPA also states that "[a]ny person

who suffers any ascertainable loss of money . . .  as a result of the use or employment

by another person of an unfair or deceptive method, act, or practice declared unlawful

by [section] 51:1405[] may bring an action individually . . . to recover actual damages."

*Id.* § 51:1409(A).  A trade practice is "unfair under the [LUTPA] only when it offends established public policy and is immoral, unethical, oppressive[,] or unscrupulous." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1059 (La. 2010).  "A trade practice that amounts to fraud, deceit, or misrepresentation is deceptive for purposes of LUTPA."  *Morice v. Hosp. Serv. Dist.*, 430 F. Supp. 3d 182, 216 (E.D. La. 2019) (internal quotation and citation omitted).

Defendant asserts summary judgment is appropriate because there is no evidence it engaged in unfair or deceptive practices under the LUTPA, considering it made numerous disclosures to Matthews and Smith regarding availability and fees related to their timeshare purchases.  (Dkt. 131 at 20–21 (citing Dkt. 132 at 16–20).) Defendant further asserts that summary judgment is appropriate because Matthews' and Smith's default on their timeshare payments caused any alleged ascertainable loss. (*Id.*)  In the amended complaint, Matthews and Smith do not state which unfair or deceptive acts or practices Defendant engaged in.  (Dkt. 90 ¶¶ 108–111.)  In their response, they direct the court to Smith's testimony that Defendant allegedly fraudulently failed to inform them that they have blackout dates, and restrictions for the timeshares, and that half of the resort was booked by non-timeshare guests, all of which made it hard for them to find availability after they booked their first trip.  (Dkt. 133-2 at 65:18–66:6.)  Viewing this testimony in the light most favorable to them, Matthews and Smith raise an issue of material fact as to whether Defendant committed a deceptive trade practice in violation of the LUTPA.  *See Morice*, 430 F. Supp. 3d at 216; *Walker v. Hixson Autoplex of Monroe, L.L.C.*, 245 So. 3d 1088, 1094 (La. Ct. App.

2017) ("Whether a defendant has violated [the] LUTPA is a factual determination.") Regarding Defendant's damages argument, the court has previously determined that issues of material fact exist given the parties' dispute about the date Matthews and Smith defaulted.   Therefore, Defendant has not met its burden of proving that Matthews' and Smith's default on their timeshare payments caused any alleged ascertainable loss.   Accordingly, Defendant is not entitled to summary judgment on Matthews' and Smith's LUTPA claims.   *Morrison*, 323 F.3d at 924.

## MOTIONS IN LIMINE

Plaintiffs move in limine to exclude evidence regarding (1) late payments by Matthews and Smith from March 18, 2019, and prior to November 2019, (2) Bedgood's medical condition, depression, and divorce, and (3) the Brandons' use of Defendant's trial timeshare plan.   (Dkt. 141 at 6.)  Evidence of Bedgood's medical condition, depression, divorce, and the Brandons' use of a discovery plan are not relevant to Bedgood's and the Brandons' remaining breach of contract claims. Defendant moves in limine to exclude evidence regarding (1) Defendant's internal documents discussing its initiative to address owner concerns dated after Plaintiffs' purchases (2) certain scripts for portions of Defendant's sales presentations, and (3) statements by purported non-party timeshare owners regarding their timeshare experiences.  (Dkt. 143 at 1.)

Regarding Plaintiffs' and Defendant's remaining arguments, this case is scheduled for a bench trial.  (Dkt. 161 at 1.)  The former Fifth Circuit noted that "the exclusionary law of evidence, 'the child of the jury system,' need not be applied in

limine where hearing is before a judge, not a jury. The judge should be empowered to hear any relevant evidence . . . ." *U.S. v. Lee*, 541 F.2d 1145, 1146 (5th Cir. 1976); *see also Chase Manhattan Bank v. First Marion Bank*, 437 F.2d 1040, 1049 n.6 (5th Cir. 1971) ("In this non-jury action, the District Judge correctly allowed Chase to proffer evidence before ruling as to admissibility."). Accordingly, district courts have found that it is generally proper to deny motions in limine before bench trials. *See, e.g.*, *T.T. Int'l Co. v. BMP Int'l, Inc.*, No. 8:19-cv-2044-CEH-AEP, 2022 WL 4125055, at *1 (M.D. Fla. Aug. 25, 2022) ("The rationale underlying pre-trial motions *in limine* is inapplicable in a bench trial, where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence.").

Because this case is set for a bench trial, the court will address the remaining issues raised in the motions in limine if and when they come up at trial. *See Perez v. United States*, No. 8:20-CV-769-SPF, 2021 WL 3371498, at *2 (M.D. Fla. Aug. 3, 2021) (quoting *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 616 F. Supp. 2d 1250, 1256 (M.D. Fla. 2009) ("When an action proceeds as a bench trial, the pretrial consideration of . . . motions [in limine] 'weighs heavily in favor of denying the motions in limine and addressing the issues if and when they come up at trial.'").

## CONCLUSION

Accordingly, it is **ORDERED**:

1. Defendant's Motion for Summary Judgment (Dkt. 131) is **GRANTED in part** and **DENIED in part**. Summary judgment is **GRANTED** as to Defendants Eddie Matthews' and Reena T. Smith's claims under count one and Charles Bedgood's, Joel Wilson Brandon's, and Hannah Lyn Heil-Brandon's claims under count two of Plaintiffs' amended complaint. Summary judgment is **FURTHER GRANTED** as to counts three, four, and five of Plaintiffs' amended complaint. Otherwise, the motion is **DENIED**.

2. Plaintiffs' Motion in Limine (Dkt. 141) is **DENIED**.

3. Defendant's Omnibus Motion in Limine (Dkt. 143) is **DENIED**.

**ORDERED** in Orlando, Florida, on July 2, 2025.

 

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record